FILED
2022 Dec-14  PM 03:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **ALLIED WORLD SURPLUS LINES INSURANCE COMPANY,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **CASE NO.: 7:22-cv-00791-ACA** |
| **DELTA OIL SERVICES, INC.; LOGAN HAYES; LUCAS HAYES; PRO-BUILT DEVELOPMENT, LLC; TRACI FERGUSON; EMILY BURNS; CLAY CRISS; MARCUS DENT; AUDREY HIGGINS; PATRICK HIGGINS; STEPHANIE LEE; JULIE NICHOLSON; TROY NICHOLSON; JASON SHAW; ANNETTE SHERRILL; MARCUS SHERRILL; JONAH WIBLE; LANCE WILLIS; & JOSEPH ELLIS,** | § § § § § § § § § § § § § § § § | |
| **Defendants.** | § | |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Allied World Surplus Lines Insurance Company ("Allied World"), and, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, files this Amended Complaint for Declaratory Judgment alleging as follows:

1.     This action for declaratory relief is brought to determine the rights, duties, status, and legal rights under the insurance policy described below with respect to two underlying lawsuits: (a) *Pro-Built Development, LLC v. Delta Oil Services, Inc. & Burgess Equipment Repair, LLC*, pending in the United States District Court for the Northern District of Alabama, Western Division, Case No. 7:21-cv-1477 (the "Pro-Built Lawsuit"); and (b) *Traci Ferguson, et al. v. Burgess Equipment Repair, LLC; Jerry Wade Burgess; Jerry Wade Burgess d/b/a Burgess Truck & Equipment Repair; Delta Oil Services, Inc.; Logan Hayes; Lucas Hayes; & Joseph Ellis*, pending in the Circuit Court of Tuscaloosa County, Alabama, CV-2021-901135 (the "Ferguson Lawsuit").

## PARTIES

2.     Allied World is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business in New York, New York.

3.     Delta Oil Services, Inc. ("Delta Oil") is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business in Tuscaloosa, Alabama.

4.     Logan Hayes is an adult citizen and resident of the State of Alabama.

5.     Lucas Hayes is an adult citizen and resident of the State of Alabama.

6.     Joseph Ellis is an adult citizen and resident of the State of Alabama.

7.      Pro-Built Development, LLC ("Pro-Built"), is a limited liability company organized and existing under the laws of the State of Alabama. Upon information and belief, Pro-Built is comprised of two members – Robert W. Owen and Edward L. Wiggins. Both Mr. Owen and Mr. Wiggins are adult citizens and residents of the State of Alabama. Accordingly Pro-Built is a citizen and resident of the State of Alabama.

8.      Traci Ferguson is an adult citizen and resident of the State of Alabama.

9.      Emily Burns is an adult citizen and resident of the State of Alabama.

10.     Clay Criss is an adult citizen and resident of the State of Alabama.

11.     Marcus Dent is an adult citizen and resident of the State of Alabama.

12.     Audrey Higgins is an adult citizen and resident of the State of Alabama.

13.     Patrick Higgins is an adult citizen and resident of the State of Alabama.

14.     Stephanie Lee is an adult citizen and resident of the State of Alabama.

15.     Julie Nicholson is an adult citizen and resident of the State of Alabama.

16.     Troy Nicholson is an adult citizen and resident of the State of Alabama.

17.     Jason Shaw is an adult citizen and resident of the State of Alabama.

18.     Annette Sherrill is an adult citizen and resident of the State of Alabama.

19.     Marcus Sherrill is an adult citizen and resident of the State of Alabama.

20.     Jonah Wible is an adult citizen and resident of the State of Alabama.

21.    Lance Willis is an adult citizen and resident of the State of Alabama.[1]

## JURISDICTION AND VENUE

22.    Allied World invokes this Court's jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

23.    Allied World is diverse from each defendant, and the amount in controversy exceeds $75,000.

24.    Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2), as a defendant resides in this District, and a substantial part of the events, acts, or omissions giving rise to the asserted claims took place in this District.

## FACTUAL BACKGROUND

**A.    <u>The Pro-Built Lawsuit</u>.**

25.    On November 4, 2021, Pro-Built filed the Pro-Built Lawsuit in the United States District Court for the Northern District of Alabama, Western Division.

26.    On January 6, 2022, Pro-Built filed its Amended Complaint, which was the operative complaint at the time this declaratory judgment action was originally filed.

---

[1] Unless otherwise noted, the individuals identified in Paragraphs 8 through 21 are referred to as the "Ferguson Plaintiffs."

27.     On October 18, 2022, Pro-Built filed its Second Amended Complaint in the Pro-Built Lawsuit, which is the current operative complaint.

28.     The Second Amended Complaint contains a significant number of the same allegations as the January 2022 amended complaint, but also contains new, conclusory allegations directly related to insurance coverage.

29.     The Second Amended Complaint is an effort to create coverage where none exists.

30.     According to the Second Amended Complaint, Burgess Equipment Repair, LLC ("Burgess") owns property located at 3325 Mitt Lary Road, Northport, Alabama 35475 (the "Burgess Truck Facility").

31.     The Second Amended Complaint alleges that Burgess is a company that services equipment and stores petroleum products in the form of used oil at the Burgess Truck Facility, and alleges that Pro-Built owns more than twenty acres of land located directly behind the Burgess Truck Facility.

32.     Pro-Built alleges that Delta Oil is an oil, gas, solvent, and/or chemical disposal company, and that it has operated at the Burgess Truck Facility for several years.

33.     The Second Amended Complaint alleges that the Burgess Truck Facility was inspected by ADEM in January of 2021.

34.    The Second Amended Complaint alleges that during this January 2021 inspection, ADEM was informed by Burgess that used oil on the property was from servicing its trucks, and that Delta Oil disposed of the used oil.

35.    The Second Amended Complaint alleges that on May 17, 2021, ADEM reported that a release was discovered at the Burgess Truck Facility on April 15, 2021, and that the release occurred at the back right-hand side of the Burgess Truck Facility, where there was a hillside leading down to a swampy area.

36.    Pro-Built alleges that Burgess had been leasing and/or renting this area of the Burgess Truck Facility to Delta Oil to park its trucks overnight, and that the ADEM inspector found the Delta Oil trucks parked in this area when the release was initially discovered.

37.    Pro-Built generally alleges that the lease was temporary, but does not provide any specific facts regarding the lease and/or rental.

38.    The Second Amended Complaint alleges that on April 15, 2021, the Tuscaloosa EMA and the Northport Fire Department began an investigation following complaints from local residents of strong solvent and petroleum odors behind their property.

39.    During this investigation, investigators from ADEM, the Tuscaloosa EMA, and the Northport Fire Department discovered an area of wetlands located behind the Burgess Truck Facility, approximately 100 square feet in size, saturated

with petroleum products that were seeping into a tributary of Carroll Creek at several points.

40.    The Second Amended Complaint alleges that the investigators discovered that the point source of the spill appeared to be two Delta Oil trucks parked in the back right-hand side of the Burgess Truck Facility.

41.    The Second Amended Complaint details the location of Pro-Built's property in relation to the Burgess Truck Facility, Carroll Creek, and Lake Tuscaloosa, and alleges that Carroll Creek is one of six subwater sheds draining into Lake Tuscaloosa and is one of the major tributaries to Lake Tuscaloosa, contributing approximately 6% of the surface drainage area.

42.    The Second Amended Complaint alleges that any sedimentation, pollution, or contaminants deposited into Carroll Creek on Pro-Built's property will flow directly into Lake Tuscaloosa.

43.    The Second Amended Complaint alleges that petroleum products and solvents flowed from Delta Oil's trucks located on the Burgess Truck Facility into Carroll Creek and into Lake Tuscaloosa.

44.    The Second Amended Complaint alleges that a former Delta Oil employee, Joseph Ellis, is expected to state that Delta Oil has deposited thousands of gallons of petroleum products and solvents into Carroll Creek over the course of two years.

45.    The Second Amended Complaint details several ADEM complaints in April of 2021 from property owners adjacent to or near the Burgess Truck Facility, reporting leaks, chemical odors, oil residue, dingy and brown drinking water, and migraines, sore throats, and upper respiratory issues from residents.

46.    The Second Amended Complaint alleges that oil spills have been occurring from the Burgess Truck Facility since 2014.

47.    The Second Amended Complaint also details a May 6, 2021 ADEM inspection at Delta Oil's properties located in Adger, Alabama, and Cottondale, Alabama; as a result of these inspections, ADEM determined that Delta Oil violated requirements for oil disposal at those locations.

48.    The Second Amended Complaint alleges that Delta Oil is a repeat offender concerning oil spills, and based on this allegation, Pro-Built contends that Delta Oil is a past polluter, has a history of noncompliance, and will continue to pollute in the future.

49.    The Second Amended Complaint alleges that there have been several complaints from the vicinity of the Huntingdon Elementary School, complaining of a foul, chemical odor, and complaining of black sludge with the appearance of petroleum.

50.    The Second Amended Complaint alleges that Delta Oil and Burgess are responsible for the chemical contamination of the adjoining properties, and the Pro-

Built's property has suffered and will continue to suffer loss of value in the before-and-after value of the property.

51.    The Second Amended Complaint also alleges that Delta Oil and Burgess have maintained, and continue to maintain, a nuisance through their business operations and failure to refusal to remediate the situation.

52.    The Second Amended Complaint contains a new section entitled "Facts and Allegations Triggering Insurance Coverage."

53.    Through this new section, Pro-Built asserts a number of general, conclusory allegations in an effort to trigger coverage under various provisions of Allied World's policy.

54.    A number of these general allegations contradict other specific allegations contained in the Second Amended Complaint.

55.    For example, in one area of the Second Amended Complaint, Pro-Built alleges that the leak or discharge giving rise to the litigation was discovered on April 15, 2021. Pro-Built also alleges that Delta Oil has been responsible for leaks or discharges for at least two years. However, in another area of the Second Amended Complaint, Pro-Built alleges that the leak or discharge actually occurred on April 15, 2021, and alleges that Delta Oil did not know of the pollution incident prior to that date.

56.    Pro-Built also alleges that it is not asserting claims for any intentional or knowing conduct on behalf of Delta Oil, but also alleges that a former employee, Joseph Ellis, is expected to state that Delta Oil has been dumping or discharging pollution materials for at least two years. Pro-Built also maintains its claim for punitive damages.

57.    The Second Amended Complaint alleges that Delta Oil was engaged in loading and unloading materials when the spill occurred, and were not on the Burgess Truck Facility for more than 72 hours, but provides no specific details regarding the process.

58.    The new allegations contained in the Second Amended Complaint do not trigger coverage, and do not create a duty to defend.

59.    As a result of the above allegations, Pro-Built alleges a number of claims against Burgess and Delta Oil: trespass; nuisance; negligence/wantonness; and violation of the Clean Water Act.

60.    Through the trespass cause of action, Pro-Built alleges that Delta Oil has disturbed the possession of its property.

61.    Through the nuisance cause of action, Pro-Built alleges that Delta Oil's improper storage and/or disposal and/or cleanup of toxic chemicals resulted in permanent contamination of its property, and this misconduct has caused, and

continues to cause, hurt, inconvenience, annoyance, damage, and irreparable injury to Pro-Built.

62.    Through the negligence/wantonness cause of action, Pro-Built alleges that Delta Oil negligently and/or wantonly maintained and/or disposed of noxious chemicals so that Pro-Built's property was permanently contaminated and damaged.

63.    Through the Clean Water Act violation cause of action, Pro-Built alleges that Delta Oil directly discharged pollution into navigable waters by discharging used oil and solvents into Carroll Creek, and that the point source of the petroleum and solvents was two Delta Oil trucks parked at the edge of the Burgess Truck Facility.

64.    Pro-Built seeks injunctive relief; compensatory damages; punitive damages; fees, costs, and interest; and reasonable costs, attorney fees, and expert fees.

65.    Allied World is currently defending Delta Oil in the Pro-Built Lawsuit subject to a complete reservation of rights.

66.    Allied World does not owe a duty to defend[2] Delta Oil in the Pro-Built Lawsuit because the Policy does not provide coverage for the claims and damages

---

[2] The Court previously dismissed Allied World's claims regarding the duty to indemnify without prejudice because the duty to indemnify is not ripe. Therefore, the duty to indemnify is not currently at issue in this litigation. Allied World reserves the right to assert that it does not owe a duty to indemnify at the appropriate time.

asserted in the Pro-Built Lawsuit, as the insuring agreements of the Policy are not met; the exclusions contained in the Policy apply to bar coverage; and/or the conditions contained in the Policy have not been met.

67.    An actual and justiciable controversy exists among the parties regarding their legal rights, status, and liabilities under the Policy with respect to the Pro-Built Lawsuit and whether Allied World has a duty to defend or indemnify Delta Oil with respect to the Pro-Built Lawsuit.

68.    Allied World seeks a declaration that it is not required to defend Delta Oil with respect to the Pro-Built Lawsuit.

**B.    The Ferguson Lawsuit.**

69.    On December 30, 2021, the Ferguson Plaintiffs filed their Complaint in the Ferguson Lawsuit in the Circuit Court of Tuscaloosa County, Alabama.

70.    The Complaint alleges that the Ferguson Plaintiffs are residents of Tuscaloosa County, Alabama, and own, occupy, and are in possession of residential homes in the Huntington Gardens neighborhood in Tuscaloosa County, Alabama.

71.    The Ferguson Plaintiffs assert causes of action against Delta Oil, Logan Hayes, and Lucas Hayes (collectively, the "Delta Defendants").

72.    The Ferguson Plaintiffs also assert causes of action against Joseph Ellis, who is alleged to have been an employee of Delta Oil.

73.    The Ferguson Plaintiffs also assert causes of action against Jerry Wade Burgess individually and doing business as Burgess Truck and Equipment Repair, and Burgess Equipment Repair, LLC (collectively referred to as "Burgess").

74.    The Complaint alleges the Burgess owns and operates a commercial truck storage and repair business at 3325 Mitt Lary Road, Northport, Alabama 35475 (the "Burgess Truck Facility").

75.    The Complaint alleges that Delta Oil transports chemical waste materials and also conducts business activities at the Burgess Truck Facility by permission of and/or agreement with Burgess.

76.    The Complaint also alleges that Logan Hayes and Lucas Hayes conduct business on behalf of Delta Oil and are the principal owners of Delta Oil.

77.    The Complaint alleges that Delta Oil purports to engage in the business of transport and disposal of industrial and chemical waste materials.

78.    The Complaint alleges that the Delta Defendants and Joseph Ellis have been involved in the transport of industrial and chemical waste materials to the Burgess Truck Facility on a periodic and repetitive basis, during the past two years.

79.    The Complaint alleges that Delta Oil operated at the Burgess Truck Facility with permission from and by agreement with Burgess.

80.    The Complaint alleges that the Burgess Truck Facility is immediately adjacent to the Huntington Gardens neighborhood in which the Ferguson Plaintiffs'

13

homes are located. They are also adjacent to a wetlands water body that borders the same residential neighborhood.

81.     The Complaint states that Delta Oil has repetitively dumped, discharged, and leaked chemical waste materials and petroleum waste materials onto the ground at the Burgess Truck Facility, and into the adjacent wetlands water body and that the waste materials have migrated into, onto, and across the Ferguson Plaintiffs' residential properties in the form of either soil and water contamination and/or airborne emissions that are toxic and noxious.

82.     The Complaint alleges that the Ferguson Plaintiffs have been exposed to the emissions, leaks, discharges, and dumping caused by all of the defendants in the Ferguson Lawsuit, and have suffered immediate harm to their persons, in the interference with the use and enjoyment of their homes and properties, and in the direct contamination of their properties in a manner that has diminished the value thereof.

83.     The Ferguson Plaintiffs also allege that they have suffered from eye and skin irritation, respiratory difficulties, aggravation of sinuses, irritation of mouth and throat, and other adverse health issues.

84.     The Ferguson Plaintiffs also allege that they suffered mental or emotional anguish from the immediate physical harm occurring to them from their direct exposure.

85.    The Ferguson Plaintiffs allege that the defendants in the Ferguson Lawsuit, including but not limited to the Delta Defendants and Mr. Ellis, have a duty to prevent discharges or airborne emissions of chemical waste materials from the Burgess Truck Facility, but that they failed to do so in breach of that duty.

86.    The Ferguson Plaintiffs allege that the defendants in the Ferguson Lawsuit, including but not limited to the Delta Defendants and Mr. Ellis, owe a duty of care to them not to discharge or emit anything from the Burgess Truck Facility that would injure, harm, invade, intrude upon, damage, trespass on, disrupt, or interfere with the Ferguson Plaintiffs' properties and neighborhood, or their persons, but that the defendants in the Ferguson Lawsuit have acted negligently and wantonly in breaching that duty.

87.    As a result of the above actions, the Ferguson Plaintiffs allege that the defendants in the Ferguson Lawsuit, including but not limited to the Delta Defendants and Mr. Ellis, caused frequent and periodic emissions and/or occurrences of extremely noxious and offensive odors, smoke, chemical waste materials, pollutants, particulates, fumes and vapors that have a pungent chemical smell which impacts the Ferguson Plaintiffs' residences and properties.

88.    The Ferguson Plaintiffs allege that the defendants in the Ferguson Lawsuits, including but not limited to the Delta Defendants, caused contamination of their residential properties and diminished the value of those properties.

89.    The Ferguson Plaintiffs also allege that they have smelled and inhaled the fumes and vapors, and that those fumes and vapors are harmful and toxic.

90.    Based on the above allegations, the Ferguson Plaintiffs asserted several causes of action against the Delta Defendants and Mr. Ellis: nuisance; trespass; negligence; wantonness; and civil conspiracy.

91.    The Ferguson Plaintiffs seek compensatory and punitive damages for these claims and seek to permanently enjoin the defendants from further nuisance and trespass.

92.    Allied World is currently defending the Delta Defendants in the Ferguson Lawsuit subject to a complete reservation of rights. Allied World is also currently defending Mr. Ellis in the Ferguson Lawsuit subject to a complete reservation of rights.

93.    Allied World does not owe a duty to defend the Delta Defendants in the Ferguson Lawsuit because the Policy does not provide coverage for the claims and damages asserted in the Ferguson Lawsuit, as the insuring agreements of the Policy are not met; the exclusions contained in the Policy apply to bar coverage; and/or the conditions contained in the Policy have not been met.

94.    Allied World does not owe a duty to defend Logan Hayes, Lucas Hayes, or Joseph Ellis because they do not qualify as insureds under the Policy.

95.    An actual and justiciable controversy exists among the parties regarding their legal rights, status, and liabilities under the Policy with respect to the Ferguson Lawsuit and whether Allied World has a duty to defend the Delta Defendants or Mr. Ellis with respect to the Ferguson Lawsuit.

96.    Allied World seeks a declaration that it is not required to defend the Delta Defendants or Mr. Ellis with respect to the Ferguson Lawsuit.

**C.    The Allied World Policy.**

97.    Allied World issued an insurance policy to Delta Oil bearing policy number 5054-1426, for the policy period December 4, 2020 to December 4, 2021 (the "Policy").

98.    The Policy contains three coverage forms pertinent to the Pro-Built Lawsuit and the Ferguson Lawsuit: the Commercial General Liability Coverage Form ("CGL"); the Contractor's Pollution Liability Coverage Form ("CPL"); and the Transportation Pollution Liability Coverage Endorsement ("TPL").

**i.    The CPL.**

99.    The CPL states that the limits of insurance are $1,000,000 per occurrence, and $2,000,000 in the aggregate.

100.    The CPL is modified by an endorsement entitled Dedicated Limit of Insurance (Contractor's Pollution Liability), which states as follows:

It is agreed that the following changes are made to the CONTRACTOR'S POLLUTION LIABILITY COVERAGE ENDORSEMENT attached to this Policy:

> Paragraph A., LIMITS OF INSURANCE of the CONTRACTOR'S POLLUTION LIABILITY COVERAGE ENDORSEMENT is deleted and replaced as follows:

| | |
|---|---|
| $1,000,000 | Each Occurrence |
| $2,000,000 | Aggregate |

Payments made by us pursuant to this Endorsement shall not reduce the General Aggregate Limit specified in the Policy Declarations.

Payments made by us pursuant to all coverage parts of this policy other than this Endorsement shall not reduce the Contractor's Pollution Liability Each Occurrence Limit or the Contractor's Pollution Liability Aggregate Limit as specified above.

Upon exhaustion of the Contractor's Pollution Liability Aggregate limit specified above, we shall have no obligation to make any further payments to or on behalf of the insured for defense, indemnification or otherwise under this Endorsement.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

101.    The CPL contains the following insuring agreement:

B.    **SECTION I – COVERAGES** is amended to include the following:

**CONTRACTOR'S POLLUTION LIABILITY**

We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" caused by a "pollution incident" because of "your work" that takes place during the policy period in the "coverage territory". We will have the right and duty to defend the insured against any "suit" seeking those "damages".

However, we will have no duty to defend the insured against any "suit" seeking "damages" for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "pollution incident" and settle any claim or "suit" that may result. But:

1.    The amount we will pay for "damages" is limited as described in the Limits Of Insurance section of this Endorsement; and

2.    Our obligation to pay "damages" is in excess of the deductible or self insured retention applicable to the policy, and solely for purposes of calculating the applicable deductible or self insured retention amount "environmental damage" will be included as "property damage"; and

This insurance applies to "bodily injury" or "property damage" only if the following terms are met:

1.    The "bodily injury" or "property damage" is caused by a "pollution incident" that occurs during the policy period in the "coverage territory".

2.    Any "bodily injury" or "property damage" that is progressive and/or indivisible over a period of days, weeks, months or longer, caused by related or continuous exposure to substantially the same general harmful conditions or substances shall be deemed to have occurred only on the date of first exposure to such conditions or substances; and

3.    A "pollution incident" that results in "bodily injury" or "property damage" which occurs during the policy periods of different policies we issued to you which provide coverage substantially similar to that provided in this policy shall be subject to the Each Occurrence Limit applicable to only one policy and it will be the first such policy during which any of

such "bodily injury" or "property damage" first occurred.

102.   The CPL also includes a number of exclusions:

Solely with respect to insurance provided under this endorsement, the following exclusions are added:

This insurance does not apply to any "damages", claim, "suit", or Supplementary Payments:

1.   **Non Owned Disposal Site**

Arising out of:

(a)   any storage, "disposal" or land filling of any hazardous substance or non-hazardous substances or material or arising out of any site, facility or "landfill" that is not a "project site"; or

(b)   any "pollution incident" on, at, under or emanating from any location to which you or others working directly or indirectly on your behalf arranges for, sends or ever have sent materials for treatment, recycling, reclamation, storage or "disposal" unless specifically endorsed onto this policy.

2.   **Prior Pollution Incident**

Arising out of or based upon a "pollution incident" existing, commencing or occurring prior to the policy effective date stated in the Policy Declarations, if:

(a)   Any "supervisory employee" knew or reasonably could have foreseen that such "pollution incident" took place; or

(b)   Such "pollution incident" was reported to any insured or any insured's agent, broker, or insurance company prior to the "policy period".

. . .

4.   **Owned, Operated, or Rented Sites**

Arising out of any "pollution incident" on, at, under or emanating from any property, location, structure or site you currently or have ever owned, operated or rented. However, this exclusion does not apply to:

(a)   "Bodily injury" or "property damage" arising out of the insured's temporary rental, lease or use of non-owned real property used solely to house materials, parts, or equipment furnished in  connection with "your work" during the duration of "your work" performed for a specific job or project . . . .

. . .

5.   **Products Liability**

Arising out of "your product" or any part of it.

6.   **Dishonest Acts or Intentional Non-compliance.**

Any dishonest, fraudulent, malicious, willful, wanton, illegal, expected or intentional act by or at the direction of any insured; or any intentional, deliberate or willful failure by any insured to comply with any statute, regulation, ordinance, administrative complaint, notice of probation, notice letter, executive order or instructions of any governmental or public agency or body.

. . .

8.   **Expected or Intended Injury or Damage**

Any "bodily injury" or "property damage" expected or intended from the standpoint of an insured.

. . .

10.   **Project-Specific Coverage**

Any project for which any insured is an insured under a project-specific insurance policy issued by any insurer providing insurance similar to the insurance provided under this Policy.

11.   **Professional Services.**

The rendering or failure to render any "professional services" by, on behalf of, or for the insured.

12.   **Progressive Or Continuing Injury Or Damage.**

Any "bodily injury" or "property damage" which first occurred, in whole or in part, prior to the "policy period" even if the "bodily injury" or "property damage" is continuing in nature or extends beyond the policy period during which the "bodily injury" or "property damage" first occurred and even if the results continue into this policy period or any subsequent policy period.

103.   The CPL is also modified by an endorsement entitled Total Professional

Services Exclusion, which states as follows:

[This insurance does not apply to:]

**Professional Liability**

Any liability arising out of:

    (1)   any breach of duty or negligent act, error, omission, malpractice or mistake in the rendering of, or failure to render, any professional services; or

    (2)   any breach of duty or negligent act, error, omission, malpractice or mistake of a professional nature;

committed by, or on behalf of, any insured in the conduct of any insured's activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured. However, this exclusion does not apply to oversight services performed by a general contractor.

104.    The CPL also contains the following definitions:

D.    Solely with respect to insurance provided under this endorsement, the    following definitions are added to the **SECTION V – DEFINITIONS**:

. . .

"Cleanup costs" mean reasonable and necessary costs and expenses incurred with our prior written consent to:

1.    Investigate, abate, contain, treat, remove, remediate, monitor, or   dispose of soil, surface water, groundwater or other contaminated media, but only provided such costs and expenses:

a.    Are specifically mandated by a governmental entity duly acting under the authority of "environmental law(s)";

b.    Have been actually incurred by a governmental entity or any political subdivision of the United States of America (including its territories and possessions), Puerto Rico and Canada, or a third party, for which you are legal liable; or

c.    Are incurred, in the absence of (a) or (b) above, to the extent recommended by an "environmental consultant" approved by us in writing.

2.    Repair or replacement of real property damaged during the performance and as result of performing cleanup activities following a "pollution incident" to which this insurance applies as specified above in 1. to substantially the same

condition of the real property immediately prior to such damage.

"Cleanup costs" do not include costs, charges or expenses for goods or services of an insured or its parent, subsidiary or affiliate unless incurred for "emergency response expense" provided coverage under the Policy.

"Damages" means:

a.     Monetary judgment, award or settlement of compensatory damages for "bodily injury" or "property damage", and punitive or exemplary damages to the extent insurable by law; and

b.     "Cleanup costs".

"Disposal" means all activities associated with the deposit of "pollutants" or other materials at a regulated or unregulated disposal site, including but not limited to any "landfill".

"Emergency response expense" means reasonable "cleanup costs" incurred by the Named Insured: (a) in response to an imminent and substantial threat to human health or the environment arising from a "pollution incident" and (b) for the period of no more than seven (7) consecutive days beginning on the day that the "pollution incident" was first discovered.

"Environmental damage" means contamination of the soil, soil vapor, the atmosphere, any watercourse or body of water (including groundwater) or plant or non-human animal life or buildings or other structures that results in "clean-up costs".

. . .

"Natural resource damages" mean physical injury to or destruction of, including the resulting loss of value of, land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States

24

(including the resources of the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act [16 U.S.C. 1801 et seq.]), any state, local or provincial government, any foreign government, any Native American tribe or, if such resources are subject to a trust restriction on alienation.

"Pollution incident" means the actual or alleged discharge, dispersal, release, seepage, migration, or escape of "pollutants" into or upon land, or any structure on land, the atmosphere (including indoor air) or any watercourse or body of water (including groundwater) provided such conditions are not naturally present in the environment in the concentration or amounts discovered.

"Project site" means the immediate area of a building, structure or property within which "your work" activities are performed.

. . .

"Supervisory employee" means any "executive officer" project foreman, site supervisor, project manager, or any officer, director, manager or supervisor who is or who has at any time been employed by or working on behalf of any insured.

E.    Solely with respect to insurance provided under this endorsement, the definition of "bodily injury", "pollutants" and "property damage" contained in the **SECTION V – DEFINITIONS** section of the policy is amended as follows:

1.    Paragraph 3. "Bodily injury" is deleted in its entirety and replaced with the following:

"Bodily injury" means physical injury, sickness or disease sustained by a person, including death resulting from any of these, arising directly out of a "pollution incident". "Bodily injury" includes mental anguish or emotional distress but only if resulting directly from physical injury, sickness or disease sustained by the same person.

25

2.    The following is added to Paragraph 17. "Property damage":

"Property damage" includes "environmental damage" and "natural resource damages".

3.    Paragraph 15. "Pollutants" is deleted in its entirety and replaced as follows:

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapors, soot, fumes, acids, alkalis, chemicals, hazardous or toxic substances, waste materials, "asbestos", "lead", petroleum hydrocarbons, low-level radioactive material and waste, "medical waste" or infectious or pathological waste, bacteria, allergens, viruses, Legionella pneumophila and "mold", electromagnetic fields, "radon", or "refractory-ceramic fibers". Waste includes materials to be recycled, reconditioned or reclaimed.

105.    The CPL contains the following Conditions:

F.    Solely with respect to insurance provided by this endorsement, Paragraph 2. of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, Duties In The Event Of Occurrence, Offense, Claim Or Suit is deleted and replaced with the following:

2.    Duties in the Event of A Claim, Suit or Pollution Incident

a.    You must see to it that we receive written notification as soon as practicable of any "supervisory employee" becoming aware of any claim, "suit", "pollution incident", "bodily injury" or "property damage" which may result in a claim, "suit" or any action or proceeding to impose an obligation on the insured for any "cleanup costs" and provide written notification as soon as practicable of any "emergency response expense" incurred. Notice should include:

(1)     How, when and where the "bodily injury", "property damage" or "pollution incident" took place;

(2)     The names and addresses of any injured persons and witnesses; and

(3)     The nature and location of any injury or damage arising out of the "pollution incident".

(4)     With respect to "emergency response expense", the nature and extent of the emergency, the manner in which you or others acting on your behalf responded to the emergency, the amount of "emergency response expense" incurred, and the names and addresses of those persons having knowledge of any of the foregoing. You and any other involved insured     must send us any technical reports, laboratory data, field notes, expert reports, investigation reports, data collected, invoices, regulatory correspondence or any other documents relating to such "emergency response expense".

Notice of a "pollution incident" and "emergency response expense" is not notice of a claim.

b.     If a claim is made against any insured including initiation of a "suit", you must see to it that we receive written notice of the claim, or "suit" as soon as practicable of any "supervisory employee" becoming aware of any such claim or "suit".

c.     The insured and any "employee" of such insured must:

(1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with any claim, "suit" or "pollution incident";

(2)    Authorize us to obtain records and other information including but not limited to all technical reports, laboratory data, field notes or any other documents generated by persons the insured has hired to investigate a claim, "suit" or "pollution incident" or to remediate a "pollution incident", all expert reports, investigations and data collected by experts the insured has retained, whether or not you intend to use the material for any purpose;

(3)    Cooperate with us in the investigation, settlement or defense of the claim, "suit" or "pollution incident"; and

(4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may apply.

(5)    Be willing to submit to recorded statements and examinations under oath and must sign his or her testimony. . . .

106.   The CGL also contains certain provisions and definitions that may also be applicable and that are not otherwise deleted or superseded by the CPL.

107.   The CGL identifies who qualifies as an insured under the Policy:

**SECTION II – WHO IS AN INSURED**

**1.**    If you are designated in the Declarations as:

. . .

    **d.**    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

. . .

**2.**    Each of the following is also an insured:

    **a.**    Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    **(1)**    "Bodily injury" or "personal and advertising injury":

    **(a)**    To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

    **(b)**    To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

29

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

108.    The CGL contains definitions that are applicable to all policy forms, in addition to the definitions set out above:

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing   document.

. . .

**8.** "Impaired property" means tangible property, other than "your product" or  "your work", that cannot be used or is less useful because:

 **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

 **b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

 **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

 **b.** Your fulfilling the terms of the contract or agreement.

. . .

**17.** "Property damage" means:

 **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or

 **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

. . .

**21.** "Your product":

 **a.** Means:

  **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(a)** You;

   **(b)** Others trading under your name; or

       **(c)**    A person or organization whose business or assets you have acquired; and

   **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

 **b.**    Includes:

   **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **(2)**    The providing of or failure to provide warnings or instructions.

 **c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.**    "Your work":

 **a.**    Means:

   **(1)**    Work or operations performed by you or on your behalf; and

   **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

 **b.**    Includes

   **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   **(2)**    The providing of or failing to provide warnings or instructions.

**ii.**    <u>**The CGL.**</u>

109.   In addition to the CGL provisions set out above, the CGL contains the following insuring agreement:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.**     **Insuring Agreement**

   **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)**     The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

   **(2)**     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   **b.**     This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

110.    The CGL also contains a number of exclusions, including the following:

**2.    Exclusions**

This insurance does not apply to:

**a.    Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

. . .

**f.    Pollution**

**(1)**    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)**    At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned    to,    any insured. However, this subparagraph does not apply to:

**(i)**    "Bodily injury" if sustained within a building and caused by smoke, fumes,

vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)**    "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)**    "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)**    At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)**    Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)**    Any insured; or

**(ii)**    Any person or organization for whom you may be legally responsible; or

**(d)**     At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)**     "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

**(ii)**    "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your

37

behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**2.** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g.    Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading and unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

. . .

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)**  the operations of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

. . .

**j.**  **Damage To Property**

"Property damage" to:

**(1)**  Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including   prevention of injury to a person or damage to another's property;

. . .

**(3)**  Property loaned to you;

. . .

**(5)**  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises

Rented To You as described in Section **III** – Limits Of Insurance.

. . .

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

. . .

**m.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

111.    The CGL contains the following Limits of Insurance provision:

**SECTION III – LIMITS OF INSURANCE**

**1.**    The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.**    Insureds;

    **b.**    Claims made or "suits" brought; or

    **c.**    Persons or organizations making claims or bringing "suits".

**2.**    The General Aggregate Limit is the most we will pay for the sum of:

    **a.**    Medical expenses under Coverage **C**;

    **b.**    Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    **c.**    Coverage **B**. . . .

112.   The CGL Declarations Page sets the applicable policy limits at $1,000,000 Each Occurrence Limit and $2,000,000 General Aggregate Limit.

113.   The CGL also contains the following Conditions:

**2.**    **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)**    How, when and where the "occurrence" or offense took  place;

        **(2)**    The names and addresses of any injured persons and witnesses; and

        **(3)**    The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**    If a claim is made or "suit" is brought against any insured, you must:

        **(1)**    Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)**    Notify us as soon as practicable.

    **c.**    You and any other insured must:

        **(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)**    Authorize us to obtain records and other information;

        **(3)**    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)**    Assist up, upon request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

114.   In addition to the CGL definitions set out above in the CPL section, the

CGL contains the following additional definitions:

    **3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

    . . .

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**15.**    "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

### iii.    **The TPL.**

115.    The TPL modifies the CGL's Pollution exclusion and Auto exclusion, and provides that these exclusions do not apply "to the extent of 'damages' resulting from a claim for 'bodily injury' or 'property damage' resulting from a 'pollution incident' in the 'coverage territory' caused by the performance of 'your work' where such 'pollution incident' occurs during the 'loading or unloading' of waste or materials solely by you onto or from, or during the transportation of waste or materials by you in, an 'auto' specified in Part G of this endorsement. . . ."

116.    The TPL provides that this coverage will cease at the earliest of the following:

1)    Cargo is moved to the final delivery place by you or on your behalf; or

2)    Cargo is moved to the final destination by you or on your behalf; or

3)    Seventy-two (72) hours after being at rest and/or not in transit if the cargo has not yet reached the final delivery place or final destination.

44

117.   The TPL defines "Loading or unloading" as follows:

"Loading or unloading" means the handling of property:

**a.**      After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.**      While it is in or on an aircraft, watercraft or "auto"; or

**c.**      While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

118.   The TPL also contains certain exclusions, including but not limited to

the following exclusions:

Solely with respect to insurance provided under this endorsement, the following exclusions are added:

This insurance does not apply to any "damages", expenses, cost, claim, or "suit" arising out of, relating to, resulting from, or based upon:

. . .

2)      Any "bodily injury" or "property damage" commencing prior to transportation or after transportation has been completed. This exclusion does not apply to "loading or unloading".

. . .

4)      Any liability, claims, "suits", or "damages" incurred or suffered by the insured arising out of the "disposal" of "pollutants", including, but not limited to liability under or arising out of the Comprehensive Environmental Response, Compensation, and

Liability Act of 1980 or any other similar Superfund law or regulation.

. . .

6)   "Bodily injury" or "property damage" expected or intended from the standpoint of any insured or any intentional, willful or deliberate failure by any insured to comply with any law or regulation, including but not limited to those issued by the Federal Department of Transportation, the Environmental Protection Agency, or any State Depart of Transportation or governmental until having jurisdiction over such activity.

119.   The TPL also contains the following Condition:

2.   Duties in the Event of A Claim, Suit or Pollution Incident

a.   You must see to it that we receive written notification as soon as practicable of any "supervisory employee" becoming aware of any claim, "suit", "pollution incident", "bodily injury" or "property damage" which may result in a claim, "suit" or any action or proceeding to impose an obligation on the insured for any "cleanup costs" and provide written notification as soon as practicable of any "emergency response expense" incurred. Notice should include:

(1)   How, when and where the "bodily injury", "property damage" or "pollution incident" took place;

(2)   The names and addresses of any injured persons and witnesses; and

(3)   The nature and location of any injury or damage arising out of the "pollution incident".

(4)   With respect to "emergency response expense", the nature and extent of the emergency, the manner in which you or others acting on your behalf

responded to the emergency, the amount of "emergency response expense" incurred, and the names and addresses of those persons having knowledge of any of the foregoing. You and any other involved insured must send us any technical reports, laboratory data, field notes, expert reports, investigation reports, data collected, invoices, regulatory correspondence or any other documents relating to such "emergency response expense".

Notice of a "pollution incident" and "emergency response expense" is not notice of a claim.

b.      If a claim is made against any insured including initiation of a "suit", you must see to it that we receive written notice of the claim, or "suit" as soon as practicable of any "supervisory employee" becoming aware of any such claim or "suit".

c.      The insured and any "employee" of such insured must:

(1)     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with any claim, "suit" or "pollution incident";

(2)     Authorize us to obtain records and other information including but not limited to all technical reports, laboratory data, field notes or any other documents generated by persons the insured has hired to investigate a claim, "suit" or "pollution incident" or to remediate a "pollution incident", all expert reports, investigations and data collected by experts the insured has retained, whether or not you intend to use the material for any purpose;

(3)     Cooperate with us in the investigation, settlement or defense of the claim, "suit" or "pollution incident"; and

(4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may apply.

(5)    Be willing to submit to recorded statements and examinations under oath and must sign his or her testimony.

d.    When any insured becomes obligated to pay "cleanup costs" to which this policy applies, the insured must:

(1)    Attempt to minimize and mitigate such costs as reasonable and necessary;

(2)    Obtain our prior written approval for any costs, charges or expenses incurred by the insured for materials supplied or services performed by the insured;

(3)    Submit, for our approval, all proposed work plans prior to submittal to any regulatory agency or duly licensed scientist or engineer authorized by law to oversee the investigation and cleanup of a "pollution incident";

(4)    Submit, for our approval, all bids and contracts regarding any investigation, removal, response or clean-up action or activity prior to the submission, execution or issuance of such bid or contract; and

(5)    Forward progress reports in connection with any investigation, removal, response or clean-up action or activity at reasonable intervals and always prior to submitting such reports to any regulatory agency or duly licensed scientists or engineer that is authorized by law to review and approve such reports.

This clause d. does not apply to any investigation, removal, response or clean-up action or activity for which you are entitled to recover "emergency response expense" under this policy.

e.    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid or "emergency response expense", without our prior consent.

## COUNT I – DECLARATORY JUDGMENT THAT ALLIED WORLD OWES NO COVERAGE TO DELTA OIL UNDER THE POLICY FOR THE PRO-BUILT LAWSUIT

120.    Allied World adopts and reasserts the allegations of Paragraphs 1-119 as if fully set forth herein.

121.    Although Allied World is defending Delta Oil in the Pro-Built Lawsuit subject to a full reservation of rights, no coverage exists under the Policy for Pro-Built's claims against Delta Oil in the Pro-Built Lawsuit.

122.    Pro-Built's claims in the Pro-Built Lawsuit do not meet the terms of the CPL, the CGL, the TPL, or other provisions of the Policy; are within the terms of the exclusions of the CPL, the CGL, the TPL, or other provisions of the Policy; and/or the conditions of the CPL, CGL, TPL, or other provisions of the Policy have not been met.

123.    The CPL does not provide coverage to Delta Oil in the Pro-Built Lawsuit because Pro-Built does not allege or seek damages for a "pollution incident" that arises from "[Delta Oil's] work."

124.  The CPL does not provide coverage to Delta Oil in the Pro-Built Lawsuit because Pro-Built alleges and seeks damages for a "pollution incident" that occurred outside of the policy period.

125.  The CPL does not provide coverage to Delta Oil in the Pro-Built Lawsuit because one or more of the following exclusions apply to preclude coverage: the Owned, Operated, or Rented Sites exclusion; the Prior Pollution Incident exclusion; the Dishonest Acts or Intentional Non-compliance exclusion; the Expected or Intended Injury or Damage exclusion; the Progressive Or Continuing Injury Or Damage exclusion; the Non Owned Disposal Site exclusion; the Products Liability exclusion; the Project-Specific Coverage exclusion; the Professional Services exclusion; and/or the Total Professional Services Exclusion.

126.  The CPL does not provide coverage to Delta Oil in the Pro-Built Lawsuit because Delta Oil failed to comply with the Duties in the Event of A Claim, Suit or Pollution Incident condition because Delta Oil failed to notify Allied World "as soon as practicable" once it or any "supervisory employee" became aware of a claim, "suit," "pollution incident," "bodily injury," or "property damage."

127.  The CGL does not provide coverage to Delta Oil in the Pro-Built Lawsuit because Pro-Built does not allege or seek damages for an "occurrence."

128.    The CGL does not provide coverage to Delta Oil in the Pro-Built Lawsuit because Pro-Built does not allege or seek damages for an "occurrence" that occurred within the policy period.

129.    The CGL does not provide coverage to Delta Oil in the Pro-Built Lawsuit because, to the extent any "occurrence" is alleged, any such "occurrence" was known to Delta Oil before the policy period commenced.

130.    The CGL does not provide coverage to Delta Oil in the Pro-Built Lawsuit because one or more of the following exclusions apply to preclude coverage: the Pollution exclusion; the Aircraft, Auto Or Watercraft exclusion; the Expected Or Intended Injury exclusion; the Damages To Property exclusion; and/or the Damage To Impaired Property Or Property Not Physically Injured exclusion.

131.    The CGL does not provide coverage to Delta Oil in the Pro-Built Lawsuit because Delta Oil failed to comply with the Duties In The Event Of Occurrence, Offense, Claim Or Suit condition because it failed to timely notify Allied World of an "occurrence" or offense which may result in a claim.

132.    The TPL does not provide coverage to Delta Oil in the Pro-Built Lawsuit because Pro-Built does not allege or seek damages for a "pollution incident" that occurred while "loading or unloading" waste or materials.

133.    The TPL does not provide coverage to Delta Oil in the Pro-Built Lawsuit because any coverage provided under the TPL had ceased based on the

following time limitations set forth in the TPL: any cargo had been moved to the final delivery place by Delta Oil or on its behalf; any cargo had been moved to the final destination by Delta Oil or on its behalf; and/or any cargo had not reached its final destination after seventy-two (72) hours of being at rest or not in transit.

134.    The TPL does not provide coverage to Delta Oil in the Pro-Built Lawsuit because one or more of the following exclusions apply to bar coverage:

This insurance does not apply to any "damages", expenses, cost, claim, or "suit" arising out of, relating to, resulting from, or based upon:

. . .

2)    Any "bodily injury" or "property damage" commencing prior to transportation or after transportation has been completed. This exclusion does not apply to "loading or unloading".

. . .

4)    Any liability, claims, "suits", or "damages" incurred or suffered by the insured arising out of the "disposal" of "pollutants", including, but not limited to liability under or arising out of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 or any other similar Superfund law or regulation.

. . .

6)    "Bodily injury" or "property damage" expected or intended from the standpoint of any insured or any intentional, willful or deliberate failure by any insured to comply with any law or regulation, including but not limited to those issued by the Federal Department of Transportation, the Environmental Protection Agency, or any State Depart of Transportation or governmental until having jurisdiction over such activity.

135.    The TPL does not provide coverage to Delta Oil in the Pro-Built Lawsuit because Delta Oil failed to comply with the Duties in the Event of A Claim, Suit or Pollution Incident, because Delta Oil failed to provide written notification as soon as practicable of any "supervisory employee" becoming aware of any claim, "suit", "pollution incident", "bodily injury" or "property damage" which may result in a claim, "suit" or any action or proceeding to impose an obligation on the insured for any "cleanup costs" and provide written notification as soon as practicable of any "emergency response expense" incurred.

136.    No other provisions in the Policy provide coverage.

137.    Because the Policy does not provide coverage for Pro-Built's claims against Delta Oil, Allied World does not owe a duty to defend Delta Oil under the Policy in the Pro-Built Lawsuit.

138.    As such, a justiciable controversy exists between the parties as to their legal rights, status, and liabilities pursuant to the Policy.

WHEREFORE, PREMISES CONSIDERED, Allied World requests the following relief:

(A)    That this Honorable Court take jurisdiction of this Complaint;

(B)    That this Honorable Court order, adjudge, and decree that this is a proper case for declaratory judgment relief and that there is a bona fide controversy between the parties as to their legal rights, status, and liabilities;

(C)    That the process of this Honorable Court be issued to Defendants as provided by law and the rules of this Court and that Defendants be ordered to respond to this Complaint within the time prescribed by law, or in the event of a failure to do so, suffer a decree *pro confesso*;

(D)    That this Honorable Court declare the rights, status, and liabilities of Allied World and Defendants named in this Complaint under the Policy;

(E)    That this Honorable Court order, adjudge, and decree that no coverage is afforded to Delta Oil under the Policy for claims in the Pro-Built Lawsuit;

(F)    That this Honorable Court order, adjudge, and decree that Allied World does not owe a duty to defend Delta Oil in the Pro-Built Lawsuit;

(G)    That this Honorable Court order, adjudge, and decree that Allied World never owed a duty to defend Delta Oil and is entitled to reimbursement from Delta Oil for any and all costs paid by Allied World in connection with the defense of Delta Oil in the Pro-Built Lawsuit;

(H)    That if Allied World is mistaken in any special relief herein prayed for, it prays for such other, further, more general relief to which it may be entitled.

## COUNT II – DECLARATORY JUDGMENT THAT ALLIED WORLD OWES NO COVERAGE TO THE DELTA DEFENDANTS AND/OR JOSEPH ELLIS UNDER THE POLICY FOR THE FERGUSON LAWSUIT

139.    Allied World adopts and reasserts the allegations of Paragraphs 1-119 as if fully set forth herein.

140.    Although Allied World is defending the Delta Defendants and Mr. Ellis in the Ferguson Lawsuit subject to a full reservation of rights, no coverage exists under the Policy for the Ferguson Plaintiffs' claims against the Delta Defendants or Mr. Ellis in the Ferguson Lawsuit.

141.    The Ferguson Plaintiffs' claims in the Ferguson Lawsuit do not meet the terms of the CPL, the CGL, the TPL, or other provisions of the Policy; are within the terms of the exclusions of the CPL, the CGL, the TPL, or other provisions of the Policy; and/or the conditions of the CPL, CGL, TPL, or other provisions of the Policy have not been met.

142.    The CPL does not provide coverage to the Delta Defendants or Mr. Ellis in the Ferguson Lawsuit because the Ferguson Plaintiffs do not allege or seek damages for a "pollution incident" that arises from "[Delta Oil's] work."

143.    The CPL does not provide coverage to the Delta Defendants or Mr. Ellis in the Ferguson Lawsuit because the Ferguson Plaintiffs allege and seek damages for a "pollution incident" that occurred outside of the policy period.

144.    The CPL does not provide coverage to the Delta Defendants or Mr. Ellis in the Ferguson Lawsuit because one or more of the following exclusions apply to preclude coverage: the Owned, Operated, or Rented Sites exclusion; the Prior Pollution Incident exclusion; the Dishonest Acts or Intentional Non-compliance exclusion; the Expected or Intended Injury or Damage exclusion; the Progressive Or

Continuing Injury Or Damage exclusion; the Non Owned Disposal Site exclusion; the Products Liability exclusion; the Project-Specific Coverage exclusion; the Professional Services exclusion; and/or the Total Professional Services Exclusion.

145.   The CPL does not provide coverage to the Delta Defendants or Mr. Ellis in the Ferguson Lawsuit because the Delta Defendants and Mr. Ellis failed to comply with the Duties in the Event of A Claim, Suit or Pollution Incident condition because they failed to notify Allied World "as soon as practicable" once it or any "supervisory employee" became aware of a claim, "suit," "pollution incident," "bodily injury," or "property damage."

146.   The CGL does not provide coverage to the Delta Defendants or Mr. Ellis in the Ferguson Lawsuit because the Ferguson Plaintiffs do not allege or seek damages for an "occurrence."

147.   The CGL does not provide coverage to the Delta Defendants or Mr. Ellis in the Ferguson Lawsuit because the Ferguson Plaintiffs do not allege or seek damages for an "occurrence" that occurred within the policy period.

148.   The CGL does not provide coverage to the Delta Defendants or Mr. Ellis in the Ferguson Lawsuit because, to the extent any "occurrence" is alleged, any such "occurrence" was known to the Delta Defendants before the policy period commenced.

149.    The CGL does not provide coverage to the Delta Defendants or Mr. Ellis in the Ferguson Lawsuit because one or more of the following exclusions apply to preclude coverage: the Pollution exclusion; the Aircraft, Auto Or Watercraft exclusion; the Expected Or Intended Injury exclusion; the Damages To Property exclusion; and/or the Damage To Impaired Property Or Property Not Physically Injured exclusion.

150.    The CGL does not provide coverage to the Delta Defendants or Mr. Ellis in the Ferguson Lawsuit because the Delta Defendants and Mr. Ellis failed to comply with the Duties In The Event Of Occurrence, Offense, Claim Or Suit condition because they failed to timely notify Allied World of an "occurrence" or offense which may result in a claim.

151.    The TPL does not provide coverage to the Delta Defendants or Mr. Ellis in the Ferguson Lawsuit because the Ferguson Plaintiffs do not allege or seek damages for a "pollution incident" that occurred while "loading or unloading" waste or materials.

152.    The TPL does not provide coverage to the Delta Defendants or Mr. Ellis in the Ferguson Lawsuit because any coverage provided under the TPL had ceased based on the following time limitations set forth in the TPL: any cargo had been moved to the final delivery place by Delta Oil or on its behalf; any cargo had been moved to the final destination by Delta Oil or on its behalf; and/or any cargo had not

reached its final destination after seventy-two (72) hours of being at rest or not in transit.

153.    The TPL does not provide coverage to the Delta Defendants or Mr. Ellis in the Ferguson Lawsuit because one or more of the following exclusions apply to bar coverage:

> This insurance does not apply to any "damages", expenses, cost, claim, or "suit" arising out of, relating to, resulting from, or based upon:
>
> . . .
>
> 2)    Any "bodily injury" or "property damage" commencing prior to transportation or after transportation has been completed. This exclusion does not apply to "loading or unloading".
>
> . . .
>
> 4)    Any liability, claims, "suits", or "damages" incurred or suffered by the insured arising out of the "disposal" of "pollutants", including, but not limited to liability under or arising out of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 or any other similar Superfund law or regulation.
>
> . . .
>
> 6)    "Bodily injury" or "property damage" expected or intended from the standpoint of any insured or any intentional, willful or deliberate failure by any insured to comply with any law or regulation, including but not limited to those issued by the Federal Department of Transportation, the Environmental Protection Agency, or any State Depart of Transportation or governmental until having jurisdiction over such activity.

154.   The TPL does not provide coverage to the Delta Defendants or Mr. Ellis in the Ferguson Lawsuit because the Delta Defendants and Mr. Ellis failed to comply with the Duties in the Event of A Claim, Suit or Pollution Incident, because they failed to provide written notification as soon as practicable of any "supervisory employee" becoming aware of any claim, "suit", "pollution incident", "bodily injury" or "property damage" which may result in a claim, "suit" or any action or proceeding to impose an obligation on the insured for any "cleanup costs" and provide written notification as soon as practicable of any "emergency response expense" incurred.

155.   No other provisions in the Policy provide coverage.

156.   Because the Policy does not provide coverage for the Ferguson Plaintiffs' claims against the Delta Defendants or  Mr. Ellis, Allied World does not owe a duty to defend the Delta Defendants or Mr. Ellis under the Policy in the Ferguson Lawsuit.

157.   As such, a justiciable controversy exists between the parties as to their legal rights, status, and liabilities pursuant to the Policy.

WHEREFORE, PREMISES CONSIDERED, Allied World requests the following relief:

(A)    That this Honorable Court take jurisdiction of this Complaint;

(B)     That this Honorable Court order, adjudge, and decree that this is a proper case for declaratory judgment relief and that there is a bona fide controversy between the parties as to their legal rights, status, and liabilities;

(C)     That the process of this Honorable Court be issued to Defendants as provided by law and the rules of this Court and that Defendants be ordered to respond to this Complaint within the time prescribed by law, or in the event of a failure to do so, suffer a decree *pro confesso*;

(D)     That this Honorable Court declare the rights, status, and liabilities of Allied World and Defendants named in this Complaint under the Policy;

(E)     That this Honorable Court order, adjudge, and decree that no coverage is afforded to the Delta Defendants or Mr. Ellis under the Policy for claims in the Ferguson Lawsuit;

(F)     That this Honorable Court order, adjudge, and decree that Allied World does not owe a duty to defend the Delta Defendants or Mr. Ellis in the Ferguson Lawsuit;

(G)     That this Honorable Court order, adjudge, and decree that Allied World never owed a duty to defend the Delta Defendants or Mr. Ellis and is entitled to reimbursement from the Delta Defendants and Mr. Ellis for any and all costs paid by Allied World in connection with the defense of the Delta Defendants in the Ferguson Lawsuit;

(H)    That if Allied World is mistaken in any special relief herein prayed for, it prays for such other, further, more general relief to which it may be entitled.

## COUNT III – DECLARATORY JUDGMENT THAT ALLIED WORLD OWES NO COVERAGE TO LOGAN HAYES OR LUCAS HAYES IN THE LAWSUITS BECAUSE THEY DO NOT QUALIFY AS INSUREDS

158.    Allied World adopts and reasserts the allegations of Paragraphs 1-119 as if fully set forth herein.

159.    Although Allied World is defending Logan Hayes and Lucas Hayes in the Ferguson Lawsuit subject to a full reservation of rights, no coverage exists under the Policy for the Ferguson Plaintiffs' claims against them in the Ferguson Lawsuit, because they do not qualify as insureds under the Policy.

160.    The Policy provides coverage to Delta Oil's "executive officers" and directors, but only with respect to their duties as officers or directors.

161.    The Policy does not provide coverage to Logan Hayes or Lucas Hayes because their alleged actions fall outside the scope of their duties as officers or directors of Delta Oil.

162.    The Policy provides coverage to Delta Oil's "employees," but only for acts within the scope of their employment by Delta Oil, or while performing duties related to the conduct of Delta Oil's business.

163.    The Policy does not provide coverage to Logan Hayes or Lucas Hayes because their alleged actions fall outside the scope of their employment with Delta

Oil, and fall outside the scope of their duties related to the conduct of Delta Oil's business.

164.    Neither Logan Hayes nor Lucas Hayes qualify as insureds under the Policy.

165.    The Policy does not provide coverage to Logan Hayes or Lucas Hayes.

166.    Because Logan Hayes and Lucas Hayes do not qualify as insureds, Allied World does not owe a duty to defend them in the Ferguson Lawsuit.

167.    As such, a justiciable controversy exists between the parties as to their legal rights, status, and liabilities pursuant to the Policy.

WHEREFORE, PREMISES CONSIDERED, Allied World requests the following relief:

(A)    That this Honorable Court take jurisdiction of this Complaint;

(B)    That this Honorable Court order, adjudge, and decree that this is a proper case for declaratory judgment relief and that there is a bona fide controversy between the parties as to their legal rights, status, and liabilities;

(C)    That the process of this Honorable Court be issued to Defendants as provided by law and the rules of this Court and that Defendants be ordered to respond to this Complaint within the time prescribed by law, or in the event of a failure to do so, suffer a decree *pro confesso*;

(D)    That this Honorable Court declare the rights, status, and liabilities of Allied World and Defendants named in this Complaint under the Policy;

(E)    That this Honorable Court order, adjudge, and decree that no coverage is afforded to Logan Hayes or Lucas Hayes for claims in the Ferguson Lawsuit because they do not qualify as insureds;

(F)    That this Honorable Court order, adjudge, and decree that Allied World does not owe a duty to defend Logan Hayes or Lucas Hayes in the Ferguson Lawsuit;

(G)    That this Honorable Court order, adjudge, and decree that Allied World never owed a duty to defend Logan Hayes or Lucas Hayes and is entitled to reimbursement from them for any and all costs paid by Allied World in connection with their defense in the Ferguson Lawsuit;

(H)    That if Allied World is mistaken in any special relief herein prayed for, it prays for such other, further, more general relief to which it may be entitled.

## COUNT IV – DECLARATORY JUDGMENT THAT ALLIED WORLD OWES NO COVERAGE TO JOSEPH ELLIS IN THE LAWSUITS BECAUSE HE DOES NOT QUALIFY AS AN INSURED

168.    Allied World adopts and reasserts the allegations of Paragraphs 1-119 as if fully set forth herein.

169.    Although Allied World is defending Joseph Ellis in the Ferguson Lawsuit subject to a full reservation of rights, no coverage exists under the Policy

for the Ferguson Plaintiffs' claims against him in the Ferguson Lawsuit, because he does not qualify as an insured under the Policy.

170.    The Policy provides coverage to Delta Oil's "executive officers" and directors, but only with respect to their duties as officers or directors.

171.    The Policy does not provide coverage to Joseph Ellis because he is not an "executive officer" or director of Delta Oil, and/or his alleged actions fall outside the scope of his duties as an officer or director of Delta Oil.

172.    The Policy provides coverage to Delta Oil's "employees," but only for acts within the scope of their employment by Delta Oil, or while performing duties related to the conduct of Delta Oil's business.

173.    The Policy does not provide coverage to Joseph Ellis because his alleged actions fall outside the scope of his employment with Delta Oil, and fall outside the scope of his duties related to the conduct of Delta Oil's business.

174.    Joseph Ellis does not qualify as an insured under the Policy.

175.    The Policy does not provide coverage to Joseph Ellis.

176.    Because Joseph Ellis does not qualify as an insured, Allied World does not owe a duty to defend him in the Ferguson Lawsuit.

177.    As such, a justiciable controversy exists between the parties as to their legal rights, status, and liabilities pursuant to the Policy.

WHEREFORE, PREMISES CONSIDERED, Allied World requests the following relief:

(A)    That this Honorable Court take jurisdiction of this Complaint;

(B)    That this Honorable Court order, adjudge, and decree that this is a proper case for declaratory judgment relief and that there is a bona fide controversy between the parties as to their legal rights, status, and liabilities;

(C)    That the process of this Honorable Court be issued to Defendants as provided by law and the rules of this Court and that Defendants be ordered to respond to this Complaint within the time prescribed by law, or in the event of a failure to do so, suffer a decree *pro confesso*;

(D)    That this Honorable Court declare the rights, status, and liabilities of Allied World and Defendants named in this Complaint under the Policy;

(E)    That this Honorable Court order, adjudge, and decree that no coverage is afforded to Joseph Ellis for claims in the Ferguson Lawsuit because he does not qualify as an insured;

(F)    That this Honorable Court order, adjudge, and decree that Allied World does not owe a duty to defend Joseph Ellis in the Ferguson Lawsuit;

(G)    That this Honorable Court order, adjudge, and decree that Allied World never owed a duty to defend Joseph Ellis and is entitled to reimbursement from him

for any and all costs paid by Allied World in connection with his defense in the Ferguson Lawsuit;

(H)   That if Allied World is mistaken in any special relief herein prayed for, it prays for such other, further, more general relief to which it may be entitled.

Respectfully submitted,

s/ Seth T. Hunter
Brenen G. Ely (ASB-0366-E54B)
Seth T. Hunter (ASB-8506-S76H)
Counsel for Allied World Surplus
Lines Insurance Company

**OF COUNSEL:**
ELY & ISENBERG, LLC
3500 Blue Lake Drive, Suite 345
Birmingham, Alabama 35243
Telephone: (205) 313-1200
Facsimile: (205) 313-1201
bely@elylawllc.com
shunter@elylawllc.com

## CERTIFICATE OF SERVICE

I do hereby certify that a true and accurate copy of the foregoing has been served on all parties of record via the CM/ECF electronic filing system and/or U.S. Mail on this the 14th day of December, 2022.

Robert F. Prince
Prince, Glover & Hayes
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, Alabama 35406
rprince@princelaw.net

Jeffrey C. Smith
Watson & Smith, LLC
1651 McFarland Blvd. N.
Tuscaloosa, Alabama 35406
jeff@watsonsmithllc.com

J. Michael Comer
Patterson Comer Law Firm
303 Main Avenue, Suite A
Northport, Alabama 35476
jmikecomer@yahoo.com

**TO BE SERVED BY CERTIFIED MAIL AND/OR PROCESS SERVER:**

Joseph Ellis
473 Destiny Drive
Winfield, Alabama 35594

s/ Seth T. Hunter
**OF COUNSEL**