

FILED

2023 Jan-11  PM 01:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **ALLIED WORLD SURPLUS** | § | |
| **LINES INSURANCE COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO.: 7:22-cv-00791-ACA** |
| | § | |
| **DELTA OIL SERVICES, INC.;** | § | |
| **LOGAN HAYES; LUCAS HAYES;** | § | |
| **PRO-BUILT DEVELOPMENT,** | § | |
| **LLC; TRACI FERGUSON;** | § | |
| **EMILY BURNS; CLAY CRISS;** | § | |
| **MARCUS DENT; AUDREY** | § | |
| **HIGGINS; PATRICK HIGGINS;** | § | |
| **STEPHANIE LEE; JULIE** | § | |
| **NICHOLSON; TROY** | § | |
| **NICHOLSON; JASON SHAW;** | § | |
| **ANNETTE SHERRILL; MARCUS** | § | |
| **SHERRILL; JONAH WIBLE; &** | § | |
| **LANCE WILLIS; & JOSEPH** | § | |
| **ELLIS,** | § | |
| | § | |
| **Defendants.** | § | |

## RESPONSE IN OPPOSITION TO MOTION TO DISMISS

i

# **TABLE OF CONTENTS**

I.  Introduction..................................................................................................1

II.  The Allegations in Pro-Built's Second Amended Complaint Do Not Establish a Duty to Defend...........................................................................1

    A.  Factual Allegations from Pro-Built's Second Amended Complaint ...............................................................................................2

    B.  Argument....................................................................................................4

III.  The *Ameritas* Factors Weigh Against Dismissal.........................................11

    A.  The Strength of the State's Interest ..................................................14

    B.  Whether the Declaratory Judgment Action Will Settle the Controversy ........................................................................................15

    C.  Whether the Declaratory Judgment Action Serves a Useful Purpose .............................................................................................16

    D.  Procedural Fencing........................................................................17

    E.  There is No Increased Friction Between State and   Federal Courts ...............................................................................................18

    F.  Whether There is an Alternative Remedy .........................................18

    G.  Underlying Factual Issues and the Court's Evaluation .....................20

    H.  Underlying Close Nexus Between Underlying Factual and Legal Issues and State Law or Public Policy ...............................................24

IV.  Consolidation is Improper ........................................................................25

V.  The Court Should Not Stay This Action ......................................................28

VI.  Conclusion ..................................................................................................28

COMES NOW Plaintiff Allied World Surplus Lines Insurance Company ("Allied World") and, in response to Pro-Built Development, LLC's ("Pro-Built") Renewed Motion to Dismiss [Doc. 43] (the "Renewed Motion"), states as follows:

## I.    Introduction.

Pro-Built's Renewed Motion is due to be denied for a number of reasons. First, to the extent Pro-Built still seeks a dismissal based on the allegations contained in its Second Amended Complaint, it is not certain from those allegations that Allied World owes a duty to defend, and therefore the Court should consider facts outside the complaint. Second, although this coverage litigation does involve two separate underlying lawsuits, and may involve some overlapping facts, the pendency of two separate lawsuits in two separate forums (one federal and one state), combined with the fact that this coverage action deals with completely separate and distinct legal issues, establishes that a dismissal or stay is inappropriate. Third, to the extent Pro-Built seeks to consolidate this coverage action with its tort lawsuit, that request is similarly due to be denied for those same reasons.

## II.    The Allegations in Pro-Built's Second Amended Complaint Do Not Establish a Duty to Defend.[1]

---

[1] Although Pro-Built does not reassert its arguments from its prior Motion to Dismiss [Doc. 35], Pro-Built states in its Renewed Motion that its Second Amended Complaint "renders Allied World's Declaratory Judgment moot because it triggers coverage." [Doc. 43, p. 2 of 8]. Pro-Built also states that it amended its complaint "to bring the allegations into direct line with Delta Oil's insurance policy" and that it "eliminated Allied World's argument that it owes no duty of defense." [Doc. 43, p. 3 of 8]. Therefore, Allied World is including its prior arguments out of an abundance of caution.

**A.      Factual Allegations from Pro-Built's Second Amended Complaint.**

On October 18, 2022, Pro-Built filed its Second Amended Complaint against Allied World's insured, Delta Oil Services, Inc. ("Delta Oil"), as well as Burgess Equipment Repair, LLC ("Burgess") in the lawsuit pending in the United States District Court for the Northern District of Alabama, case number 7:21-cv-1477-RDP. This Second Amended Complaint represents a blatant attempt to manufacture coverage. It contains nothing more than general, conclusory allegations, with no factual details or support. Furthermore, the Second Amended Complaint still contains allegations that create significant coverage questions and contradicts itself in certain areas.

The basic premise of Pro-Built's lawsuit concerns an alleged waste discharge at property owned by Burgess and caused, at least in part, by Delta Oil. [Doc. 43-1, pp. 5-6, ¶¶ 25-30]. Pro-Built alleges that Delta Oil rented or leased a portion of Burgess's land. [Doc. 43-1, p. 2, ¶ 9]. Pro-Built alleges that the discharge originated, at least in part, from trucks owned by Delta Oil and parked on the Burgess Property. [Doc. 43-1, pp. 5-6, ¶¶ 25-30]. Pro-Built alleges that Delta Oil has engaged in waste discharge into Carroll Creek for at least two years. [Doc. 43-1, p. 8, ¶ 43].

On October 18, 2022, Pro-Built added additional allegations related specifically to insurance coverage, titling its new allegations "Facts and Allegations Triggering Insurance Coverage." [Doc. 43-1, pp. 11-17]. These allegations are

directed to the terms, provisions, and exclusions of Allied World's insurance policy, but the vast majority are bare assertions with no factual support. Even where the Second Amended Complaint *appears* to allege new facts, closer examination reveals allegations that do not defeat coverage and instead contradict other allegations in the Second Amended Complaint.

For example, Pro-Built now alleges that the discharge occurred on one specific day, April 15, 2021. [Doc. 43-1, p. 11, ¶ 52]. However, in another section of the Second Amended Complaint, Pro-Built alleges that a former Delta Oil employee is expected to state that Delta Oil has been discharging waste into Carroll Creek for at least two years. [Doc. 43-1, p. 8, ¶ 43]. Pro-Built also now claims that it is not making any claim for dishonest, fraudulent, malicious, willful, illegal, expected, or intentional acts by Delta Oil. [Doc. 43-1, p. 16, ¶ 73]. Yet, Pro-Built still seeks punitive damages which, as set out below, require this type of conduct. [Doc. 43-1, p. 41, ¶ 190]. Pro-Built also alleges that Delta Oil is likely to pollute in the future, which necessarily implies some intent to continue improper conduct. [Doc. 43-1, pp. 38-39, ¶ 180].

In addition, in one section, Pro-Built alleges that Delta Oil merely parks trucks overnight at the Burgess property, and the source of the discharge was in the area of the parked trucks. [Doc. 43-1, p. 5, ¶ 27]. By contrast, in another section, Pro-Built alleges that the discharge occurred while Delta Oil was "loading or unloading" waste

materials. [Doc. 43-1, p. 16, ¶ 75]. Pro-Built also alleges that Delta Oil continues to park trucks at Burgess's property. [Doc. 43-1, p. 38-39, ¶ 180].

Pro-Built included specific photographs regarding the alleged location of the point source of the discharge and the location of Delta Oil's trucks. The photographs show the point source location some distance away from the main building on the property, casting doubt as to how "loading or unloading" could occur while a truck was parked overnight away from any "loading or unloading" areas. [Doc. 43-1, pp. 5, 6].

## B.    Argument.

The duty to defend is the only issue in this litigation at this time. [*See* Doc. 26]. Under Alabama law, "[w]hether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005) (quoting *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 14 (Ala. 2001)). Although the underlying complaint is the primary focus, it is not the end of the analysis where the underlying complaint is unclear regarding coverage: "However, '[t]his Court . . . has rejected the argument that the insurer's obligation to defend must be determined solely from the facts alleged in the complaint in the action against the insured.'" *Hartford*, 928 So. 2d at 1009-10 (quoting *Acceptance*, 832 So. 2d at 14).

"[T]he court is not limited to the bare allegations of the complaint in the action against [the] insured but may look to facts which may be proved by admissible evidence. . . ." *Id.* at 1010 (quoting *Acceptance*, 832 So. 2d at 14). "[I]f there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured." *Id.* (quoting *Acceptance*, 832 So. 2d at 14). The *Hartford* Court went on to state:

> Where facts are alleged in the complaint to support a cause of action, it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action. As we have said: "[I]f there is any uncertainty as to whether the complaint alleges *facts* that would invoke the duty to defend, the insurer must investigate the *facts* surrounding the incident . . . to determine whether it has a duty to defend. . . .

*Id.* at 1012 (quoting *Acceptance*, 832 So. 2d at 14) (emphasis in original).

The Eleventh Circuit has explained that, in a situation where the underlying complaint lacks specific factual detail, a court should look to admissible evidence concerning the actual facts:

> [T]he problem presented to the district court was the question of what to do when the underlying pleading – the Arbitration Complaint – did not specify either a legal theory of recovery or allege any detail concerning the operative facts. Turning to Alabama law for a solution, the district court found ample authority for extending the inquiry beyond the arbitration complaint and examining the available evidence concerning the facts. . . .
>
> . . .

We find no error in taking that approach in the circumstances of this case.

*Am. Safety Indem. Co. v. T.H. Taylor, Inc.*, 513 F. App'x 807, 811 (11th Cir. 2013) (internal citations omitted).

Even with the Second Amended Complaint, there are a number of uncertainties regarding coverage. First and foremost, Pro-Built still maintains that Delta Oil has been discharging waste for at least two years. [Doc. 43-1, p. 8, ¶ 36]. Whether the date of the Second Amended Complaint is used (October 18, 2022), or the date of the complaint originally made the basis of this declaratory judgment action is used (January 6, 2022 [Doc. 38, p. 4, ¶ 26]), there is no duty to defend because the activity began prior to Allied World's policy period. Allied World's policy went into effect on December 4, 2020. [Doc. 38, p. 17 of 67, ¶ 97].

As set out in the Amended Complaint for Declaratory Judgment, there are multiple policy coverage forms at issue — the Contractor's Pollution Liability Coverage Form ("CPL"); the Commercial General Liability Coverage Form ("CGL"); and the Transportation Pollution Liability Coverage Endorsement ("TPL"). [Doc. 38, p. 17, ¶ 98]. The CPL and the CGL are stand-alone coverage forms, while the TPL modifies certain exclusions contains in the CGL. The CPL contains a Prior Pollution Incident exclusion, which excludes coverage for any pollution incident existing, commencing, or occurring prior to the December 4, 2020 effective date, if the incident was reported to an insured, or if any "supervisory

employee" knew or could have foreseen that such an incident occurred. [Doc. 38, p. 20]. Similarly, the CGL (and thus, by extension the TPL) does not apply if an insured or an authorized employee had knowledge of a prior incident. [Doc. 38, p. 34].

Although the Second Amended Complaint generally alleges that no "supervisory employee" knew of any incident, there are no specific factual allegations supporting this contention. Instead, the Second Amended Complaint states that "Joseph Ellis, a former employee of Delta Oil Services, is expected to state that Delta Oil Services deposited thousands of gallons of petroleum products and solvents into Carroll Creek over the course of two years." [Doc. 43-1, p. 8, ¶ 36]. In fact, Mr. Ellis has already publicly stated that Delta Oil intentionally discharged waste for at least two years, at the direction of his supervisor, Logan Hayes (the brother of Lucas Hayes, Delta Oil's president).[2] This would not only bar coverage under the above provisions, but also would bar coverage under the CPL's Dishonest Acts or Intentional Non-compliance exclusion and/or the Expected or Intended Injury or Damage exclusion; the CGL's Expected or Intended Injury exclusion; and/or the TPL's similar expected or intended injury exclusion. [Doc. 38, pp. 21, 35, 46]. Because the Second Amended Complaint is uncertain on this issue,

---

[2]     patch.com/alabama/Tuscaloosa/former-driver-blames-delta-oil-not-burgess-northport-spill

Allied World is entitled to conduct discovery and determine whether admissible evidence related to the facts establishes these exclusions.

The same is true with regard to Pro-Built's claim for punitive damages. Although Pro-Built claims that it is not alleging any dishonest, fraudulent, malicious, willful, illegal, expected, or intentional acts by Delta Oil, punitive damages are only recoverable if "it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." Ala. Code § 6-11-20(a). These actions could potentially trigger the above expected or intended injury exclusions. [Doc. 38, pp. 21, 35, 46]. Again, given the uncertainty of the Second Amended Complaint, Allied World is entitled to conduct discovery on this issue.

Similarly, Pro-Built's statement that it is not alleging this type of conduct is not the end of the analysis regarding the expected or intended injury exclusions. In Alabama, a subjective test applies to determine if an expected or intended injury occurred. *See Ala. Farm Bureau Mut. Cas. Ins. Co. v. Dyer*, 454 So. 2d 921, 925 (Ala. 1984). "Under this subjective test, an injury is 'intended from the standpoint of the insured' if the insured possessed the specific intent to cause [] injury to another, whereas an injury is 'expected from the standpoint of the insured' if the insured subjectively possessed a high degree of certainty that [] injury to another would result from his or her act." *Dyer*, 454 So. 2d at 925. The Second Amended

8

Complaint's request for punitive damages, coupled with the allegation that Delta Oil has been discharging waste for two years and Mr. Ellis's claims, establishes the uncertainty which requires fact discovery.

The allegations regarding "loading and unloading" (which were completely absent from Pro-Built's prior complaint); the allegations regarding the leasing or rental of Burgess's property and the alleged temporary nature of that leasing or rental (again, absent from Pro-Built's prior complaint); the allegations regarding the parking of trucks at the property; and the photographs showing the location of the point source when compared to the buildings on the property all create discrepancies that show the uncertainty that allows Allied World to go beyond the complaint and conduct discovery. Mr. Ellis's claims (*see* n.3, *supra*) further support this need.

All these issues relate to the application of a number of exclusions, which Allied World has the burden of proving. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Britt*, 203 So. 3d 804, 813 (Ala. 2016) (insurer has the burden of proving application of exclusion). Therefore, given the uncertainties, Allied World is entitled to conduct discovery to ascertain whether facts support the various exclusions.

A claimant amending the underlying complaint in an attempt to circumvent a declaratory judgment is not novel, and has been addressed by district courts in Alabama on at least two occasions. *See Allstate Indem. Co. v. Berrey*, 2016 WL 3906414 (N.D. Ala. July 19, 2016); *Essex Ins. Co. v. Foley*, 2011 WL 1706214 (S.D.

Ala. May 5, 2011) ("*Foley* II"). In *Berrey*, the claimant similarly amended the underlying complaint to alter certain allegations to attempt to create coverage. 2016 WL 39064114 at *3. Thereafter, the insured filed summary judgment and argued "that the <u>changed</u> allegations in the Amended Complaint compel this Court to find that there is a duty to defend, and that this Court must ignore evidence which suggests otherwise." *Id.* at *10 (emphasis in original). The Court rejected this argument, relying on Alabama law: "When any uncertainty exists about whether the occurrence is covered under the policy, the court is not limited to the bare allegations of the complaint in the action against the insured but may look to facts which may be proved by admissible evidence." *Id.* (quoting *Great Am. Ins. Co. v. Baddley & Mauro, LLC*, 330 F. App'x 174, 177 (11th Cir. 2009)). Relying on *Foley* II and Alabama law, the Court held that the proper approach was to consider "<u>both</u> the allegations in the underlying action's Amended Complaint, <u>and</u> the evidence presented" to determine whether there was a duty to defend. *Id.* at *11-12, 12 (emphasis in original); *see also Foley* II, 2011 WL 1706214 at *1, 6, 6 n.12.

The current situation is no different. Pro-Built's Second Amended Complaint creates a number of uncertainties, especially based on the contradictions, additions of allegations that were not previously present, and the conclusory statements aimed at pleading coverage. Allied World is entitled to conduct discovery on these issues, in order to obtain admissible evidence, which the Court can compare with the

allegations at the appropriate time. Therefore, based on Alabama law, *Berrey*, and *Foley* II, Pro-Built's Renewed Motion is due to be denied.

## III.    The *Ameritas* Factors Weigh Against Dismissal.

Pro-Built's new primary argument is that this declaratory judgment action is due to be dismissed because of the factual overlap between its Second Amended Complaint and this declaratory judgment action. Pro-Built's argument is based on *National Trust Insurance Co. v. Southern Heating & Cooling, Inc.*, 12 F.4th 1278 (11th Cir. 2021), in which the Eleventh Circuit clarified the analysis to undertake when a district court determines whether to abstain from a declaratory judgment action under *Ameritas Variable Life Insurance Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005).[3] *See National Trust*, 12 F.4th at 1284 ("To eliminate any doubt, we now expressly hold that the existence of a parallel proceeding is not a prerequisite to a district court's refusal to entertain an action under § 2201(a).").

While *National Trust* does discuss factual overlap between a state tort lawsuit and a federal declaratory judgment action, the factual overlap went to facts which directly impacted both the underlying action and the coverage action, and was not the only reason that the Eleventh Circuit affirmed the district court's dismissal. Instead, the Eleventh Circuit reviewed and applied all of the *Ameritas* factors and

---

[3] *Ameritas* is based, in turn, on two United States Supreme Court opinions, *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

found that, in addition to the factual overlap, the state of Alabama had a strong interest in resolving the dispute because one of the coverage issues concerned an area of unsettled Alabama law. *See National Trust*, 12 F.4th at 1288 ("The parties agree that no Alabama state court has ruled on the issue [of whether carbon monoxide constitutes a 'pollutant'], and the open question of state law increases Alabama's interest in determining the issue."). As discussed below, that is not the case here; Alabama law regarding insurance contract interpretation is well-settled, and even if it were not, the Eleventh Circuit seemingly agreed that a novel issue of law would not require a dismissal. *See id.* at 1289 ("[F]ederal courts routinely decide novel state-law issues in diversity actions."). In *National Trust*, the unresolved question of Alabama law, combined with the factual overlap, led the Eleventh Circuit to affirm the district court's dismissal. *Id.* at 1288-90.

Therefore, *National Trust* is distinguishable and is not determinative of whether this Court should exercise its discretion and allow the parties to litigate the coverage issues in this action. Instead, the Court employs "a totality-of-the-circumstances standard" in reviewing all of the *Ameritas* guideposts, "because the guideposts that we provided in *Ameritas* are not exhaustive; not all are required; and no one is controlling." *Id.* at 1286 (emphasis added). In doing so, the Court should look to whether there is anything unique or distinguishable that favors dismissal or

12

abstention, given that insurers frequently litigate liability coverage issues in federal court:

> In weighing the *Ameritas* factors in a dispute between a liability insurer and its insured . . . , I suggest district courts focus on whether there is anything unique or extraordinary that differentiates their case from the mine run of liability insurance disputes. For example, one could ask: Does the State have a stronger interest in deciding this particular state-law issue in state court than it normally would in a state-law liability insurance dispute? Is there a state-specific public policy at play that is not present in most other insurance disputes? Is there some important factual dispute in the state litigation that would be unusually dispositive in the declaratory judgment action? We answered these questions in the affirmative in *National Trust*, where coverage first turned on an open question of state law that had split state courts (whether carbon monoxide was a "pollutant" under the policy's pollution exclusion) and then on a difficult fact question that was being litigated in the underlying tort action (whether the fire that harmed the third parties was burning outside of its intended location, potentially triggering a "hostile fire" exception to the pollution exclusion).

*James River Ins. Co. v. Rich Bon Corp.*, 34 F.4th 1054, 1062-63 (11th Cir. 2022) (Brasher, J., concurring). Where there is nothing unique or extraordinary, the Court should exercise its discretion and decide the declaratory judgment action. *See James River*, 34 F.4th at 1063 (Brasher, J., concurring) ("But, as the Court's opinion suggests, there is nothing special about this case that warrants declining jurisdiction. Far from it. The district court can resolve this dispute by interpreting the terms of the insurance contract – specifically, the policy's bodily injury limits, a worker's compensation exclusion, and an employer liability exclusion, which are all common features of commercial insurance policies. Federal courts routinely answer questions

like these."). Therefore, *National Trust* on its own is not dispositive, and the *Ameritas* factors must be considered.

### A.    The Strength of the State's Interest.

The first *Ameritas* factor is "the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts[.]" *Ameritas*, 411 F.3d at 1331. While the state of Alabama has some interest in this litigation, because it involves Alabama law and Alabama citizens, it is not so overwhelming as to necessitate a dismissal or a stay. First, only one of the underlying lawsuits is pending in state court – the Ferguson Lawsuit[4] is pending in the Circuit Court of Tuscaloosa County, but Pro-Built's lawsuit is pending in this District. Therefore, Alabama's interest is limited because one of the lawsuits is pending in a federal forum. Second, unlike in *National Trust*, this coverage action does not impact Alabama public policy because insurance policy interpretation law is well-settled, and federal courts routinely interpret insurance policies according to this well-established Alabama law. As the concurrence in *National Trust* noted, "[f]ederal district courts routinely issue declaratory judgment about liability insurers' duties to defend and indemnify against the claims in an underlying state tort lawsuit" and emphasized that "the Court's opinion does not suggest that district courts should –

---

[4] *Traci Ferguson, et al. v. Burgess Equipment Repair, LLC, et al.*, pending in the Circuit Court of Tuscaloosa County, Alabama, CV-2021-901135.

or could – decline to resolve these routine disputes as a regular practice." 12 F.4th at 1290 (Brasher, J., concurring). Therefore, unlike *National Trust*, the state of Alabama does not have an increased interest in resolving this coverage issue. *See Auto-Owners Ins. Co. v. Cymbal Props., LLC*, 2021 WL 4314458, at *8 (S.D. Ala. Sept. 22, 2021) ("In this case, there is no open or novel question of state law increasing Alabama's interest.").

Furthermore, the issue of Allied World's coverage obligation has not been raised in either underlying lawsuit, and is unique to this declaratory judgment action. "[G]iven that the issue has not been raised in any [underlying] proceeding, there is no indication that the State has a strong interest in having it decided in a state court." *Cymbal*, 2021 WL 4314458 at *8. Because the underlying lawsuits will not address the coverage issues present in this action and because there are no Alabama public policy matters at issue, the first factor does not weigh in favor of abstention.

## B.    Whether the Declaratory Judgment Action Will Settle the Controversy.

The second *Ameritas* factor is "whether the judgment in the federal declaratory action would settle the controversy." *Ameritas*, 411 F.3d at 1331. Because Allied World's coverage obligations are not at issue in the underlying lawsuits, a judgment in this action would not settle the underlying lawsuits, which weighs against dismissing this action. *See Cymbal*, 2021 WL 4314458 at *8 ("As a

judgment would not settle the controversy, this supports the case remaining in this Court.").

Conversely, a judgment in this action will completely resolve the insurance coverage issues made the basis of this action. As noted, this is the only action in which the coverage issues are pending before any court. Resolving this declaratory judgment action will completely resolve the coverage dispute between the parties and would not settle or resolve any of the underlying issues as between the various parties. Therefore, this factor weighs against abstention.

### C. Whether the Declaratory Judgment Action Serves a Useful Purpose.

The third *Ameritas* factor is "whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue." *Ameritas*, 411 F.3d at 1331. This declaratory judgment action undoubtedly serves a useful purpose in clarifying the parties' legal relations. In this action, Allied World asserts that its policy provides no coverage to Delta Oil; Logan Hayes; Lucas Hayes; or Joseph Ellis. Resolution of the coverage issues will show that they are not entitled to coverage and will therefore clarify the parties' relationships. Accordingly, this factor weighs against abstention. *See Am. Builders Ins. Co. v. Riverwood Const., LLC*, 2022 WL 4367055, at *5 (N.D. Ala. Sept. 21, 2022) ("Instead, a definitive ruling by this court concerning Builders' obligations may eliminate some uncertainty in the underlying litigation by clarifying the legal relationship between Builders and

Riverwood and Null – a question not present in the underlying lawsuits."); *see also Accident Ins. Co. v. Mathews Dev. Co., LLC*, 2021 WL 1617258, at *3 (M.D. Ala. Apr. 26, 2021) (where the declaratory judgment action "*would* help clarify the legal relations between [an insurance company and the defendants] . . . the third factor (clarification of legal relations) supports the conclusion that the court should not abstain."); *Cymbal*, 2021 WL 4314458 at *8 (where declaratory judgment action presents insurance coverage issues related to underlying lawsuit, a "declaration as to coverage (and/or applicability of any exclusions) would be insightful to the parties' positions in the underlying litigation.").

> ### D.    Procedural Fencing.

The fourth *Ameritas* factor is "whether the declaratory remedy is being used merely for the purposes of 'procedural fencing' – that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable[.]" *Ameritas*, 411 F.3d at 1331. There is no procedural fencing in this declaratory judgment action because this action will not resolve the underlying lawsuits, so there is no race for *res judicata* for Allied World to win. In fact, the underlying lawsuits were both pending for some time before Allied World initiated this litigation – Pro-Built originally filed its lawsuit on November 4, 2021, and the Ferguson Plaintiffs filed their lawsuit on December 30, 2021. [Doc. 38, p. 4, ¶ 25; p. 12, ¶ 69]. Allied World did not initiate this lawsuit until June 27, 2022. [Doc. 1].

Therefore, Allied World is not "racing for *res judicata*" even if *res judicata* was possible. Thus, this factor does not weigh in favor of abstention. *See Riverwood*, 2022 WL 4367055 at *5 ("Builders appears to have brought this action in a proper forum for a proper purpose to resolve issues not included in the underlying litigation.").

### E.    There is No Increased Friction Between State and Federal Courts.

The fifth *Ameritas* guidepost is "whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction." *Ameritas*, 411 F.3d at 1331. This factor weighs against abstention because "[t]he issues of insurance coverage and . . . [Allied World's] . . . duty to defend are not pending in any of the underlying state-court actions, so there is no reason to believe that this case would cause any friction with the state courts or encroach on the state proceedings." *Cymbal*, 2021 WL 4314458 at *8 (quoting *Mathews Dev.*, 2021 WL 1617258 at *4); *see also Riverwood*, 2022 WL 4367055 at *5 ("The court's adjudication of Builders' obligation to defend and indemnify Riverwood and Null does not in any way encroach on the underlying litigation or cause friction between federal and state judiciaries.").

### F.    Whether There is an Alternative Remedy.

The sixth guidepost is "whether there is an alternative remedy that is better or more effective[.]" *Ameritas*, 411 F.3d at 1331. Here, no better or alternative remedy

exists because Allied World is not a party to either of the underlying lawsuits, and its coverage issues here invoke specific coverage issues that are not at issue in the underlying lawsuits.

Furthermore, the underlying lawsuits are pending in two separate forums, one in state court and one in federal court, and the parties are not the same in each lawsuit – while Delta Oil is a defendant in both actions, the other defendants (Logan Hayes, Lucas Hayes, and Joseph Ellis) are only defendants in the state court lawsuit. [Doc. 38, p. 2, ¶ 1]. Therefore, Allied World cannot obtain complete adjudication of all its coverage issues without litigating a declaratory judgment that involves both underlying lawsuits and all of the entities and individuals seeking coverage. There is no pending lawsuit in any other forum that provides this relief. However, in this declaratory judgment action, Allied World can litigate all of the coverage issues against all of the relevant parties, and fully and finally adjudicate the coverage issues as to both underlying lawsuits.

Furthermore, Alabama law precludes Allied World from litigating the coverage issues in the same lawsuit as the tort claims. *See* Ala. R. Civ. P. 18(c). This action cannot be dismissed, and the coverage issues simply joined in the state liability action. Rather, dismissal of this action would result in Allied World filing a completely new lawsuit with no guarantee of being assigned the same judge as the state court action (while still also litigating coverage issues related to a pending

19

federal lawsuit as well). It would be non-sensical to dismiss this properly filed declaratory judgment action only to have Allied World file the same action in a new state court proceeding when all necessary parties have already appeared in this action (aside from Joseph Ellis, who was just recently added as a defendant and is in the process of being served) and this Court is fully capable of resolving the coverage issues.

In addition, Allied World has already issued written discovery to Delta Oil, Logan Hayes, and Lucas Hayes, and has issued third-party subpoenas to nonparties seeking documents. If this litigation were to begin anew in a state court action, Allied World would have to begin the process of discovery again, resulting in a waste of resources.

Lastly, Allied World, like Pro-Built, opted to file this litigation in federal court. Pro-Built should not be able to utilize federal court while also seeking to deprive Allied World of that right, especially when Allied World has already begun the discovery process to move this matter towards dispositive motions. Therefore, for these reasons, the sixth guidepost weighs against abstention.

### G.    Underlying Factual Issues and the Court's Evaluation.

The seventh and eighth guideposts are closely related:

(7)    whether the underlying factual issues are important to an informed resolution of the case;

20

(8)    whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

*Ameritas*, 411 F.3d at 1331. Pro-Built's primary argument is that the factual overlap between this coverage action and the underlying lawsuits dictates that the Court should abstain from this action. Although Allied World recognizes that there may be some factual overlap with the underlying lawsuits, it is not significant enough to warrant abstention:

> But the mere overlap of certain facts, without more, does not in any way suggest that this case will interfere or encroach on the state court proceedings, much less justify the imposition of a stay of this properly filed federal declaratory judgment action pending the conclusion of the Underlying Action. After all, it is rare that an insurance coverage declaratory judgment action does not involve overlapping facts with the underlying tort action, yet such declaratory judgment actions deciding coverage routinely coexist with state-court litigation concerning liability.

*Essex Ins. Co. v. Foley*, 2011 WL 290423, at *3 n.5 (S.D. Ala. Jan. 27, 2011) ("*Foley I*").

A number of the areas of factual overlap identified by Pro-Built have no relevancy to its underlying lawsuit, and instead pertain only to coverage. For example, whether the purported discharge occurred on one specific day, or over a period of time, does not impact whether Delta Oil, Logan Hayes, Lucas Hayes, or Joseph Ellis, are actually liable in the underlying lawsuits, which focus on claims such as negligence, wantonness, trespass, and nuisance. [Doc. 38, p. 10, ¶ 59; p. 16, ¶ 90]. The facts at issue in the underlying lawsuits relate to whether these defendants

are liable for a discharge, not when a discharge occurred. However, when the discharge occurred or began is directly relevant to the coverage issues presented here, either because the loss could have occurred before the policy period, or because Delta Oil failed to comply with the notice conditions in the policy. These coverage issues will not be decided in the underlying lawsuits, and the facts necessary to litigate these coverage issues are not directly at issue in the underlying lawsuits.

Similarly, whether the purported leak or discharge originated from loading or unloading materials, or from some other method, is not pertinent to establishing liability in the underlying lawsuits, but it is a discrete issue that impacts potential coverage and/or the applicable coverage form that controls coverage. Although that fact may arise in the underlying lawsuits, its importance is minimal because it would not impact the defendants' liability – the question in the underlying lawsuits is whether Delta Oil, Logan Hayes, Lucas Hayes, and/or Joseph Ellis improperly caused a discharge, not the specific nature of how that discharge occurred. But here, how the discharge occurred is relevant to identifying the applicable coverage form, and thus the applicable terms, conditions, and exclusions at issue.

Another factual issue that is relevant to the coverage dispute is whether Delta Oil was leasing or renting the property from which the discharge occurred, and if so, the terms and length of the lease or rental agreement. Those facts, however, are not

relevant to whether the defendants are liable in the underlying lawsuits. [Doc. 38, p. 21 (Owned, Operated, or Rented Sites exclusion)].

*Foley* I dealt with almost the same situation, where the motion to dismiss was based primarily on the purported factual overlap. *Foley* I, 2011 WL 290423 at *3 n.5. The Court found that the factual overlap was not significant enough to warrant dismissal, and explained that although there may be some factual overlap, the facts that overlapped were not central to liability in the underlying lawsuits, but were critical to the coverage issues:

> Water's Edge further asserts that (i) the state court will decide when the purportedly hazardous condition was created and what Water's Edge knew about it; (ii) the state court may consider facts as to "[t]he relationship of these business entities to each other and to the construction project"; (iii) facts decided in the Underlying Action "will also affect the interpretation of the insurance application and policy"; and (iv) generally speaking, "[t]he facts leading to a decision of the substance of the federally pleaded issues will be decided in state court." . . . But this reasoning is opaque for at least three reasons. First, it is not at all clear that the state-court jury will consider many facts bearing on Essex's duty to defend or indemnify in deciding the key questions in that case, which include whether Water's Edge negligently or wantonly built a ramp to Tacky Jack's, whether that ramp was unreasonably dangerous, whether that negligence or wantonness caused Foley's injuries, and the extent of Foley's damages. Second, even assuming coverage-related facts are relevant to Foley's lawsuit, that the jury may (or may not) consider these facts in the Underlying Action does not mean that it will make conclusive formal findings concerning each of them. And third, even if the jury in the Underlying Action were to make formal findings of fact on each of these points, extrapolating from those findings to the coverage issues joined in this declaratory judgment action would require a factual and legal leap that these jurors will not be asked to make, thus leaving the coverage issues joined in this case undecided even after the Underlying Action has concluded.

*Foley* I, 2011 WL 290423 at *3 n.5.

The same is true here – as set out above, while there may be some factual overlap, the facts that are central to the coverage dispute are not central to establishing liability in the underlying lawsuits, and there is no guarantee that a jury in the underlying lawsuits decides these issues. This is a key distinction with *National Trust* – there, the factual overlap was central to both the underlying liability and the potential application of an exception to an exclusion. *See National Trust*, 12 F.4th at 1282. Because any factual overlap goes to facts that are not central to establishing liability in the underlying lawsuits, this guidepost does not weigh in favor of dismissal or abstention.

## H.   Close Nexus Between Underlying Factual and Legal Issues and State Law or Public Policy.

The ninth *Ameritas* guidepost is "whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Ameritas*, 411 F.3d at 1331. This guidepost does not weigh in favor of abstention:

> [I]t is true that the question about the scope of insurance coverage in this case must be decided in accordance with Alabama law. However, because the issue is not currently pending in the underlying state-court cases, or in any other state-court litigation, this factor does not favor abstention.

In any event, dismissing this case or staying it pending the outcome of the underlying action would be unproductive and would waste judicial resources because the question of . . . [the insurer's] duty to defend "would remain undecided . . . after the underlying action was completed." [*Emp'rs Mut. Cas. Co. v. Kenny Hayes Custom Homes, LLC*, 101 F. Supp. 3d 1186, 1191 (S.D. Ala. 2015)]. In fact, the issue would "almost certainly be rendered moot" by a stay, "needlessly frustrating" . . . [the insurer's] efforts to obtain a resolution. *Id.* "Far from being wasteful or inefficient, allowing this declaratory judgment action to proceed would provide substantial benefits to all parties by affording them certainty as to the current murky status" of Accident Insurance's duties towards the Mathews defendants, providing good reason for this court to hear this case.

*Cymbal*, 2021 WL 4314458 at *9 (quoting *Mathews Dev.*, 2021 WL 1617258 at *4).

For these reasons, the ninth guidepost does not favor abstention. After analyzing all of the *Ameritas* guideposts, it is clear that they are either neutral or favor this Court retaining jurisdiction over this declaratory judgment action, because "there is nothing special about this case that warrants declining jurisdiction." *James River*, 34 F.4th at 1063 (Brasher, J., concurring). Therefore, Pro-Built's Renewed Motion is due to be denied.

## IV.   Consolidation is Improper.

Pro-Built asks the Court to consolidate this case with its underlying lawsuit if the Court does not dismiss this action. However, consolidation is inappropriate. Rule 42 of the Federal Rules of Civil Procedure provides "that a district court may consolidate actions that 'involve a common question of law or fact.'" *U.S. v. Jefferson Cty., Ala.*, 2010 WL 11583344, at *1 (N.D. Ala. Nov. 15, 2010). As set

25

out above, the factual issues in the two cases do not overlap to the degree to require consolidation, and different facts are pertinent to the different lawsuits. Therefore, for the same reasons that abstention is inappropriate, consolidation is similarly inappropriate.

Furthermore, the legal issues presented in the two cases are drastically different. As set out above, Pro-Built's underlying lawsuit centers on whether Delta Oil was negligent or wanton, created a nuisance, and/or trespassed onto Pro-Built's property. Here, the legal issues involve whether Allied World owes a duty to defend not only to Delta Oil, but also to Logan Hayes, Lucas Hayes, and Joseph Ellis, none of whom are parties to Pro-Built's lawsuit. Furthermore, the legal issues related to the duty to defend are completely separate and distinct from whether Delta Oil is liable to Pro-Built, and involves the interpretation of Allied World's insurance policy, the potential application of a number of exclusions, and the application of the policy's notice provisions. These issues are not present in the underlying lawsuit.

In addition, the parties are not the same. There are only two parties that are present in both this action and Pro-Built's lawsuit – Pro-Built and Delta Oil. The individual homeowner defendants, Logan Hayes, Lucas Hayes, and Joseph Ellis are not parties in Pro-Built's lawsuit. Therefore, this action involves discovery issued to defendants that are not present in Pro-Built's lawsuit, which would result in the

parties in that case wasting resources while discovery is conducted on the coverage issues to parties that have no relationship to the ongoing litigation, and vice versa.

Primarily, however, these actions should not be consolidated because Allied World is currently defending Delta Oil subject to a reservation of rights and is seeking to litigate coverage in this action. Consolidating the actions would inject liability coverage issues into Pro-Built's lawsuit against Delta Oil. Both the Federal Rules of Evidence and the Alabama Rules of Civil Procedure prohibit injecting insurance coverage issues into the liability litigation. *See* Fed. R. Evid. 411; Ala. R. Civ. P. 18(c).

The two lawsuits are also pending on separate timelines, with this litigation likely reaching its conclusion much sooner than Pro-Built's lawsuit. The current discovery deadline in this case is April 28, 2023, with dispositive motions due July 10, 2023. [Doc. 33, pp. 2-3]. However, discovery was just recently extended in Pro-Built's lawsuit to end August 1, 2023, and dispositive motions are not due until September 1, 2023. [*See* Doc. 46, Case No. 7:21-cv-1477-RDP]. The parties will have fully briefed dispositive motions in this case by the time they are due to be initially filed in Pro-Built's lawsuit. Therefore, consolidating these cases would delay resolution of the duty to defend, which does not require the same discovery as is being conducted in the underlying lawsuits.

The central facts are not the same, the legal issues are not the same, the parties are not the same, and coverage should not be injected into the liability lawsuit. For these reasons, consolidation should be denied.

## V.   The Court Should Not Stay This Action.

To the extent Pro-Built seeks a stay in lieu of a dismissal, a stay is inappropriate. For the same reasons the *Ameritas* factors do not favor dismissal, they do not favor a stay. Furthermore, Allied World is currently expending costs to defend Delta Oil, Logan Hayes, Lucas Hayes, and Joseph Ellis, and it should not be forced to wait until the underlying lawsuits are completed to have the duty to defend decided. *See Cymbal*, 2021 WL 4314458 at *9 (quoting *Mathews Dev.*, 2021 WL 1617258 at *4) ("In any event, dismissing this case or staying it pending the outcome of the underlying action would be unproductive and would waste judicial resources because the question of . . . [the insurer's] duty to defend 'would remain undecided . . . after the underlying action was completed.'"); *see also Riverwood*, 2022 WL 4367055, at *5 ("Instead, a definitive ruling by this court concerning Builders' obligations may eliminate some uncertainty in the underlying litigation by clarifying the legal relationship between Builders and Riverwood and Null . . . ."). Therefore, Pro-Built's Renewed Motion is due to be denied.

## VI.   Conclusion.

28

The potential factual overlap is not sufficient enough to dismiss or stay this litigation, and the *Ameritas* guideposts favor this Court retaining jurisdiction. Therefore, Pro-Built's Renewed Motion is due to be denied.

WHEREFORE, PREMISES CONSIDERED, Allied World respectfully requests that this Honorable Court enter an order denying Pro-Built's Renewed Motion.

Respectfully submitted,

s/ Seth T. Hunter
Brenen G. Ely (ASB-0366-E54B)
Seth T. Hunter (ASB-8506-S76H)
Counsel for Allied World Surplus Lines Insurance Company

**OF COUNSEL:**
ELY & ISENBERG, LLC
3500 Blue Lake Drive, Suite 345
Birmingham, Alabama 35243
Telephone: (205) 313-1200
Facsimile: (205) 313-1201
bely@elylawllc.com
shunter@elylawllc.com

## **CERTIFICATE OF SERVICE**

I do hereby certify that a true and accurate copy of the foregoing has been served on all parties of record via the CM/ECF electronic filing system and/or U.S. Mail on this the 11th day of January, 2023.

Robert F. Prince
Prince, Glover & Hayes
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, Alabama 35406
rprince@princelaw.net

Jeffrey C. Smith
Watson & Smith, LLC
1651 McFarland Blvd. N.
Tuscaloosa, Alabama 35406
jeff@watsonsmithllc.com

J. Michael Comer
Patterson Comer Law Firm
303 Main Avenue, Suite A
Northport, Alabama 35476
jmikecomer@yahoo.com

s/ Seth T. Hunter
**OF COUNSEL**