FILED

2023 Dec-22  PM 12:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **ALLIED WORLD SURPLUS LINES** | ] | |
| **INSURANCE COMPANY,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **7:22-cv-00791-ACA** |
| | ] | |
| **DELTA OIL SERVICES, INC., et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION AND ORDER</u>

According to lawsuits filed in federal and state court, Defendant Delta Oil Services, Inc. allowed thousands of pounds of petroleum products and solvents to leak from several of its trucks into a residential neighborhood and a creek that flows into Lake Tuscaloosa. Allied World Surplus Lines Insurance Company provided commercial general liability insurance to Delta Oil. As with most insurance policies, Delta Oil's policy contained exclusions which eliminated coverage that would otherwise be available. In addition to the exclusions, it had several endorsements, including a transportation pollution liability coverage endorsement (the "transportation endorsement"), which added an exception to one exclusion, and a contractor's pollution liability coverage endorsement (the "contractor's endorsement"), which provided additional coverage.

Allied, which is currently defending Delta Oil and several related defendants in the underlying lawsuits subject to a reservation of rights, filed this lawsuit seeking a declaratory judgment that it owes no duty to defend or indemnify those defendants. This court previously dismissed Allied's claim about the duty to indemnify as unripe. (Doc. 25). As a result, the only claim currently pending in this court is Allied's request for a declaratory judgment about its duty to defend.

Allied now seeks summary judgment on its duty to defend claim as well as reconsideration of the court's dismissal of the duty to indemnify claim. (Doc. 62). With respect to its summary judgment motion, Allied does not dispute that coverage exists under the commercial general liability policy for most of the defendants, although it does argue that Defendant Lucas Hayes cannot be considered an insured on the policy. Instead, it contends that (1) an exclusion in the policy eliminates coverage and Delta Oil cannot satisfy the exception created by the transportation endorsement; and (2) Delta Oil is not entitled to coverage under the contractor's endorsement, and even if it were, exclusions in that endorsement eliminate coverage. (Doc. 64 at 15–34).

Because Allied's argument about Lucas Hayes is insufficient to support summary judgment and a reasonable jury could find that the exception in the transportation endorsement provides coverage, the court need not address whether coverage under the contractor's endorsement exists or is excluded. The court

therefore **DENIES** the motion for summary judgment. The court also **DENIES** the motion for reconsideration, both because the court remains convinced that the duty to indemnify claim is unripe and because Allied's argument about reconsideration rests on its success on its motion for summary judgment.

## I.     BACKGROUND

Alabama law provides that the duty to defend "is determined primarily by the allegations contained in the complaint." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005) (quotation marks omitted). Where the allegations in the underlying complaint would, if true, establish a duty to defend, the court may not consider evidence outside the pleading. *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1064 (Ala. 2003) ("[T]his Court has never held that, even though the allegations of a complaint *do* allege a covered accident or occurrence, the courts may consider evidence outside the allegations to disestablish the duty to defend."). But where the allegations in the underlying complaint are ambiguous because they neither exclude nor affirmatively allege a covered claim, courts can consider extrinsic evidence. *Id.* Accordingly, the court will first describe the underlying complaints before setting out the evidence the parties presented in this case.

1.  The *Pro-Built* Lawsuit

In 2021, Pro-Built Development, LLC, filed suit in federal district court against Delta Oil and Burgess Equipment Repair, LLC. (Doc. 63-1). The operative complaint alleges that Burgess is an equipment-servicing company; part of its servicing includes storing "petroleum products in the form of used oil." (Doc. 63-3 ¶ 11). Burgess operates on a property located in Northport, Alabama, next to Pro-Built's property. (*Id.* ¶¶ 7, 9, 11). In 2014, the Alabama Department of Environmental Management ("ADEM") investigated and cited Burgess for discharging oil into a wetland area. (*Id.* ¶¶ 12–20).

At some point, Delta Oil, "an oil, gas, solvent, and/or chemical disposal company," began leasing or renting part of the Burgess property. (*Id.* ¶¶ 9–10; *see also id.* ¶ 51). Delta Oil not only parked its tankers on the Burgess property, it also collected and disposed of Burgess's petroleum products. (Doc. 63-3 ¶¶ 68–69).

In 2021, after members of a nearby community complained of strong odors behind their homes, ADEM, the Tuscaloosa County Emergency Management Agency, and the Northport Fire Department investigated Burgess's facility and found, just behind it, an area saturated with petroleum. (*Id.* ¶¶ 28–29). Two Delta Oil tankers, which had been parking overnight on the Burgess property and which were full of used oil from Burgess's business, were the likely source of the spill. (*Id.*

¶¶ 27, 30, 70, 77). The chemical waste from the Delta Oil trucks flowed from the Burgess property into Carroll Creek and then Lake Tuscaloosa. (*Id.* ¶ 35).

Pro-Built asserts against both Burgess and Delta Oil state law claims for trespass, nuisance, negligence, and wantonness, and a federal claim for violating the Clean Water Act. (Doc. 63-3 at ¶¶ 80–187).

### 2.  The *Ferguson* Lawsuit

Shortly after Pro-Built filed its complaint, fourteen individuals living in the Huntington Gardens neighborhood in Tuscaloosa County, Alabama (the "*Ferguson* plaintiffs") filed suit against Burgess and two related defendants (collectively, the "Burgess defendants"); Delta Oil; Delta Oil's owners, brothers Logan and Lucas Hayes; and a truck driver and operator for Delta Oil. (Doc. 63-2 ¶¶ 1–6, 13). The *Ferguson* plaintiffs allege that the Burgess defendants own a truck facility used for repair, maintenance, and storage of commercial trucks, hauling equipment, waste material transfer tanks, and chemical waste material containers. (*Id.* ¶ 9). Delta Oil, which transports and disposes of industrial and chemical waste materials, uses the Burgess truck facility "on a periodic and repetitive basis . . . with permission from and by agreement with the Burgess defendants." (*Id.* ¶¶ 12, 14–15).

According to the *Ferguson* plaintiffs, "the Delta Oil Services defendants have repetitively dumped, discharged, and leaked chemical waste materials and petroleum waste materials onto the ground at the Burgess Truck Facility and into the adjacent

wetlands water body." (*Id.* ¶ 20). Those "waste materials have migrated into, onto and across the plaintiffs' residential properties in the form of either soil and water contamination and/or airborne emissions that are toxic and noxious." (Doc. 63-2 ¶ 20). The *Ferguson* plaintiffs bring state law claims of nuisance, trespass, negligence, wantonness, and conspiracy against all named defendants. (*Id.* ¶¶ 33– 69).

3.  Evidence in This Case

Delta Oil picks up used oil "from anyone that changes their own motor oil" and sells it, typically to a refinery or an asphalt plant. (Doc. 63-4 at 4). Usually, Delta Oil sells the oil immediately after picking it up but sometimes it has to hold onto the oil "for several days." (*Id.* at 5). In that case, Delta Oil takes the oil to its transfer facility in Adger, Alabama, where it offloads the oil into bulk storage tanks. (*Id.*).

In 2017, Delta Oil began parking its trucks overnight at Burgess, occasionally with oil still in the trucks.[1] (*Id.* at 7, 12). It never left trucks there longer than overnight unless Burgess was repairing the truck. (*Id.* at 9, 13).

---

[1] The parties dispute whether Delta Oil was "renting" space from Burgess. Logan Hayes, one of Delta Oil's owners, testified that he rented the space. (Doc. 63-4 at 7). The owner of Burgess attests that he did not rent any space to Delta Oil, but he admits that Delta Oil and Burgess had a "working arrangement" under which Delta Oil picked up Burgess's used oil in exchange for storing Delta Oil trucks and oil at the facility. (Doc. 68-1 ¶¶ 2–3). Allied attached to its reply brief an unauthenticated text message, purportedly from Burgess's owner to Logan Hayes, asking for a rent payment. (Doc. 70-1). Even if the text message were admissible, the court could not consider it because Allied presents it for the first time with its reply brief and the non-movants have not had an opportunity to respond to it. *See Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1299

Aside from evidence about Delta Oil's parking practices, Allied also presents testimony from Lucas Hayes that he worked for Delta Oil from 2009 until around 2016. (Doc. 63-5 at 3). Despite not working for Delta Oil after 2016, he was listed as the president of Delta Oil until 2022. (*Id.*).

Delta Oil had a commercial general liability policy through Allied. (Doc. 63-6). Two endorsements to the policy are relevant in this case: the transportation endorsement (*id.* at 26–31) and the contractor's endorsement (*id.* at 20–25). The court will describe the relevant provisions of the policy and endorsements in more detail below.

## II.    DISCUSSION

Allied moves for summary judgment on its claim that it owes Delta Oil (and related defendants) no duty to defend because: (1) exclusions to the commercial general liability eliminate coverage under the commercial general liability policy; (2) the transportation endorsement's exception to one of the exclusions does not apply to revive coverage; (3) the contractor's endorsement does not create coverage; (4) even if the contractor's endorsement created coverage, exclusions in the

---

(11th Cir. 2022) ("[D]istrict courts abuse their discretion when they deny a party a chance to respond to new arguments or facts raised for the first time in a reply brief in support of a motion for summary judgment and subsequently enter judgment on the basis of those new arguments or facts.") (quotation marks omitted). Regardless, the dispute about whether Delta Oil "rented" space from Burgess is immaterial because that question is relevant only to an exclusion that the court need not address.

endorsement eliminate coverage; and (5) Lucas Hayes does not qualify as an insured under the policy. (Doc. 64 at 5, 15–34). Allied also moves for reconsideration of the court's dismissal of its duty to indemnify claim. (*Id.* at 34–37). The court will address the motion for summary judgment first, followed by the motion for reconsideration.

### 1.  Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "initial burden" of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law always rests on the movant, *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991), but the specific showing required at summary judgment depends on which party has the burden of proof at trial, *see United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (en banc) ("*Four Parcels of Real Prop.*"). If the moving party does not bear the burden of proof at trial, to prevail on summary judgment the party can either show "an absence of evidence to support the nonmoving party's case" or affirmatively present evidence "demonstrating that the nonmoving party will be unable to prove its case at trial." *Four Parcels of Real Prop.*, 941 F.2d at 1437–38. On the other hand, if the moving party bears the burden of proof at trial, the movant must "show

that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *Id.* at 1438.

"Under Alabama law, the burden is on the insured to establish coverage exists under an insurance policy." *Emps. Mut. Cas. Co. v. Mallard*, 309 F.3d 1305, 1307 (11th Cir. 2002). Because Delta Oil is the insured and therefore bears the burden of establishing coverage, Allied need only "point out . . . [the] absence of evidence" establishing coverage, although it could also elect to affirmatively negate coverage. *See Four Parcels of Real Prop.*, 941 F.2d at 1438 (alterations accepted; quotation marks omitted).

If, however, the court finds that sufficient evidence of coverage exists, the court must address whether any exclusions "eliminate[ ] coverage that would have existed in the absence of the exclusion." *Royal Ins. Co. of Am. v. Thomas*, 879 So. 2d 1144, 1149 (Ala. 2003). In general, the burden of establishing that an exclusion applies rests on the insurer. *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001). Accordingly, to prevail on summary judgment based on an exclusion, Allied must affirmatively "show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *See Four Parcels of Real Prop.*, 941 F.2d at 1438 (alterations accepted; quotation marks omitted).

Exclusions may contain exceptions, which "preserve[ ] coverage that would have been excluded by the exclusion in the absence of the exception." *Royal Ins. Co. of Am.*, 879 So. 2d at 1149–50. The briefing in this case does not make clear who bears the burden of establishing the applicability of an exception. Allied contends that the insured bears this burden. (Doc. 64 at 27). Although Alabama law is not clear on this point, *see Lawler Mach. & Foundry Co. v. Pac. Indem. Ins. Co.*, 383 So. 2d 156, 157–58 (Ala. 1980) (declining to address who bears the burden of showing application of an exception to an exclusion), Delta Oil does not object to Allied's position (*see generally* doc. 69 at 13–14).

With the standard of review in mind, the court turns to whether Allied has carried its burden of showing that it is entitled to summary judgment on its claim that neither the commercial general liability policy (and its transportation endorsement) nor the contractor's endorsement impose a duty to defend Delta Oil or related defendants. The court begins with the commercial general liability policy and its transportation endorsement.

The commercial general liability coverage form requires Allied to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Doc. 63-6 at 5). It also gives Allied "the right and duty to defend the insured against any 'suit' seeking those damages," but it does not require Allied "to defend the insured against

any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (*Id.*).

Allied presents two distinct arguments related to commercial general liability coverage. It first contends that Lucas Hayes, the former president of Delta Oil, is not insured under the policy. (Doc. 64 at 33–34). Allied's next contention is that exclusions in the policy eliminate coverage for the claims made in the underlying lawsuits. (*Id.* at 15–22). According to Allied, the "Expected or Intended Injury" exclusion eliminates coverage in the *Ferguson* lawsuit and the "Pollution" exclusion eliminates coverage in both the *Ferguson* and the *Pro-Built* lawsuits. (*Id.*). The court will first address whether Lucas Hayes is an insured before turning to the exclusions.

### a. Definition of Insured

The commercial general liability coverage form defines "insured" by reference to how the insured is "designated in the Declarations." (Doc. 63-6 at 12). If the insured is designated as "[a] limited liability company," insureds include the named insured and its members. (*Id.*). By contrast, if the insured is designated as "an organization other than a partnership, joint venture, or limited liability company," insureds include the named insured and "executive officers and directors." (*Id.* at 13) (quotation marks omitted).

Allied does not address these different provisions for different designations. (*See* doc. 64 at 33–34). Instead, operating on the assumption that Delta Oil is a

corporation, Allied argues that the provision for corporations applies and that Lucas Hayes cannot be an insured because he was not an executive officer, or associated with Delta Oil, at the time of the underlying incidents. (Doc. 64 at 33–34). Allied's reference to the corporation provision makes sense: all parties have alleged that Delta Oil is a corporation. (*See* doc. 1 ¶ 3; doc. 63-2 ¶ 4; doc. 63-3 ¶ 5).

The problem is that the definitions section of the policy itself does not depend on what the named insured actually is; it depends on how the declarations page "designates" the insured. (*See* doc. 63-6 at 12). And the declarations page expressly designates "Delta Oil Services, Inc." as an "LLC." (*Id.* at 1). Accordingly, the court must apply the LLC provision. (*See id.* at 1, 12).

Allied has made no argument and presented no evidence about whether Lucas Hayes qualifies as an insured under the LLC provision. (*See generally* doc. 64 at 33– 34). The court finds that Allied failed to carry its "initial burden . . . to identify the portions of the record that it believes show the absence of a genuine issue of material fact and to show that it is entitled to judgment as a matter of law." *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1160 (11th Cir. 2022). Accordingly, the court **DENIES** the motion for summary judgment on the claim that Allied has no duty to defend Lucas Hayes because he is not an insured under the policy.

b. *"Expected or Intended Injury" Exclusion*

The commercial general liability form excludes coverage for "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." (Doc. 63-6 at 6). Every count of the *Ferguson* complaint (asserting claims of nuisance, trespass, negligence, wantonness, and conspiracy) incorporates the allegation that "the defendants had knowledge that their actions and conduct were wrongful and would foreseeably cause such harm, but defendants nevertheless failed to abate same." (Doc. 63-2 ¶¶ 32–33, 40, 48, 59, 67). Allied contends that this allegation invokes the exclusion, eliminating any duty to defend in the *Ferguson* lawsuit. (Doc. 64 at 16–17; doc. 71 at 9–10).

In the insurance context, the Alabama Supreme Court has rejected the use of tort and criminal law presumptions about a person's intent based on "the natural and probable consequences of his or her intentional acts." *Ala. Farm Bureau Mut. Cas. Ins. Co. v. Dyer*, 454 So. 2d 921, 925 (Ala. 1984). So in Alabama "the policy term, 'expected or intended injury,' cannot be equated with 'foreseeable injury.'" *Id.* Instead, "an injury is 'intended from the standpoint of the insured' if the insured possessed the specific intent to cause bodily injury to another" and "an injury is 'expected from the standpoint of the insured' if the insured subjectively possessed a high degree of certainty that bodily injury to another would result from his or her act." *Id.* "[W]hether an injury which the insured inflicts upon another . . . is

13

'expected or intended from the standpoint of the insured' is a question of fact for the jury or judge." *Id.* at 924 (quotation marks omitted). In *Dyer*, the Alabama Supreme Court held that, despite the insured shooting his brother in a drunken argument, the "expected or intended injury" exclusion did not, as a matter of law, eliminate coverage. 454 So. 2d at 923, 926.

The fact that the *Ferguson* lawsuit alleges that Delta Oil knew its conduct was wrongful and would foreseeably cause harm is insufficient to exclude coverage as a matter of law. *See id.* at 925. None of the claims allege Delta Oil had either "the specific intent to cause bodily injury [or property damage]" or "a high degree of certainty that bodily injury [or property damage]" would result from its actions. *See id.* Even the claim of wantonness, which alleges willful misconduct, contains no such allegation. (*See* doc. 63-2 ¶¶ 59–66). Because Alabama requires "specific intent" or a "high degree of certainty" for application of the "intended or expected" exclusion but defines wantonness as an act done "with knowledge of danger, or with consciousness, that the doing or not doing of some act will *likely* result in injury," *Pruitt v. Oliver*, 331 So. 3d 99, 116 (Ala. 2021) (emphasis added; quotation marks omitted), coverage of the wantonness claims against Delta Oil cannot be excluded.

Nothing in the allegations of the *Ferguson* lawsuit establishes the applicability of the "intended or expected" exclusion. And Allied has not presented any evidence

14

outside the pleadings in support of this exclusion. Accordingly, the court **DENIES** Allied's motion for summary judgment with respect to this exclusion.

        *c.*   *Pollution Exclusion*

The commercial general liability form also excludes, in part, coverage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants': (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, to any insured" or "(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for: (i) Any insured." (Doc. 63-6 at 7). No party disputes that the used motor oil at issue in this case qualifies as a "pollutant" or that the underlying lawsuits arise out of the actual release of a pollutant. (*See* doc. 64 at 19–20; *cf.* doc. 69 at 6).

Allied contends that this exclusion eliminates coverage because Delta Oil was renting the Burgess property and because Delta Oil was transporting and handling the used motor oil. (Doc. 64 at 20–22). Defendants dispute whether Delta Oil was renting the Burgess property (doc. 69 at 34–35), but they do not contest that Delta Oil was transporting and handling the oil. (*See id.* at 16–19). As a result, the exclusion eliminates coverage.

However, there are exceptions to the exclusion, among them the one added by the transportation endorsement. (*See* doc. 63-6 at 7, 26). That exception provides

coverage for damages "resulting from a 'pollution incident' . . . caused by the performance of 'your work' where such 'pollution incident' occurs during the 'loading or unloading' of waste or materials solely by you onto or from, or during the transportation of waste or materials by you in, an 'auto.'" (*Id.* at 26). Coverage under this exception stops at the earliest of three events: when (1) the cargo "is moved to the final delivery place by you or on your behalf"; (2) the cargo "is moved to the final destination by you or on your behalf"; or (3) "[s]eventy-two (72) hours after being at rest and/or not in transit if the cargo has not yet reached the final delivery place or final destination." (*Id.*).

Allied contends that Defendants cannot show the applicability of this exception because the spill did not occur during the "performance" of Delta Oil's "work" or while Delta Oil was "loading or unloading" oil and, even if the exception applies, there is an "Expected or Intended Injury" exclusion that again removes coverage. (Doc. 64 at 31–33). The court will address each argument in turn.

### i.   "Performance" of "Your Work"

First, the exception applies only when "the performance of '[the insured's] work'" caused the pollution incident. (Doc. 63-6 at 26). The policy does not define "performance." (*See id.* at 18). Allied argues that the court should define that word to mean "the execution of an action," which would exclude coverage unless the spill occurred "while Delta Oil was in the process of executing an action regarding its

work in collection [of] used motor oil." (Doc. 64 at 31). In Allied's view, because the spill occurred overnight, Delta Oil was not executing any actions and this exception cannot apply. (*Id.*).

The court must use general rules of contract interpretation when interpreting an insurance contract. *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). In interpreting a contract containing multiple provisions, "all are construed together so that a harmonious operation can be given to each provision as far as the language used will permit." *U.S. Fid. & Guar. Co. v. Jacksonville State Univ.*, 357 So. 2d 952, 955 (Ala. 1978). "If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it." *Herrera*, 912 So. 2d at 1143. And "[w]hen doubt exists whether coverage is provided, the language used by the insurer must be construed for the benefit of the insured." *Guar. Nat'l Ins. Co. v. Marshall Cnty. Bd. of Educ.*, 540 So. 2d 745, 748 (Ala. 1989).

Allied relies on a definition from the online version of Merriam-Webster's Dictionary to establish the meaning of "performance." (Doc. 64 at 31). The first entry from that dictionary entry defines the word to mean "the execution of an action." *Performance*, Merriam-Webster, https://www.merriam-webster.com/dictionary/performance (last visited Dec. 22, 2023). According to Allied, this means that Delta Oil was engaged in "the performance of [its] work" only when it was

actively "in the process of executing an action regarding its work in collect[ing] used motor oil." (Doc. 64 at 31).

The court does not agree with Allied's narrow definition of "performance," even under the dictionary definition it chose. For one thing, "the execution of an action" does not necessarily exclude moments of rest during the execution. For another, the dictionary Allied chose also defines performance as "the fulfillment of a claim, promise, or request." *Performance*, Merriam-Webster, https://www.merriam-webster.com/dictionary/performance (last visited Dec. 22, 2023). That second definition could also encompass periods of rest during the performance of a job.

Moreover, other dictionaries—including Merriam-Webster's Unabridged Dictionary—define "performance" more broadly. Merriam-Webster's Unabridged Dictionary defines it as "the act or process of carrying out something" or "the fulfillment of a claim, promise, or request." *Performance*, Merriam-Webster's Unabridged Dictionary, Merriam-Webster, https://unabridged.merriam-webster.com/unabridged/performance (last visited Oct. 19, 2023). Similarly, the Oxford English Dictionary defines "performance" as "[t]he accomplishment or carrying out of something commanded or undertaken; the doing of an action or operation" or "[t]he carrying out, discharge, or fulfillment of a command, duty, promise, purpose, responsibility, etc." *Performance*, Oxford English Dictionary (3d

18

ed. 2005). Those definitions indicate that "performance" encompasses the time between beginning a task and fulfilling it; a person of ordinary intelligence could reasonably give "performance" a construction under which a job is performed until it is finished or abandoned, even when the person doing the job is at rest overnight.

The rest of the exception reinforces the court's reading. *See U.S. Fid. & Guar. Co.*, 357 So. 2d at 955 (instructing courts to construe all provision together "so that a harmonious operation can be given to each provision as far as the language used will permit"). The exception provides that coverage ceases at the earliest of three moments, one of which is "[s]eventy-two (72) hours after being at rest and/or not in transit if the cargo has not yet reached the final delivery place or final destination." (Doc. 63-6 at 26). If the cargo can be at rest for seventy-two hours before coverage ceases, performance must encompass times when the insured is not actively engaged in the execution of an action. Given the policy language and the dictionary definitions discussed above, the court rejects Allied's narrow reading of "performance" as meaning only the times when the insured is actively "in the process of executing an action." (Doc. 64 at 31).

The court must next determine whether the allegations in each lawsuit satisfy this definition of "performance." The complaint in the *Pro-Built* lawsuit alleges that the spill "likely" occurred overnight while the Delta Oil trucks were parked at the Burgess property containing oil Delta Oil had picked up from Burgess for disposal.

19

(Doc. 63-3 ¶¶ 20, 27, 30, 70, 77). Given the definition of "performance" discussed above, this is sufficient on its face to invoke the duty to defend, and the court may not consider extrinsic evidence. *See Tanner*, 874 So. 2d at 1064.

The complaint in the *Ferguson* lawsuit is less clear. It contains no specific allegations about how or when the spill happened, but it does allege that Delta Oil caused the spill from the Burgess truck facility. (Doc. 63-2 ¶¶ 12, 14, 20–23). This is likely clear enough to invoke the duty to defend. *See Tanner*, 874 So. 2d at 1064. But in the event the allegations could be considered ambiguous, the court will consider the extrinsic evidence presented. *See id.* The evidence shows that Delta Oil sometimes parked its trucks at Burgess overnight with oil in the tanks. (Doc. 63-4 at 7, 12). It also would collect Burgess's used motor oil. (Doc. 68-1 ¶ 3; doc. 63-4 at 7). Based on this evidence, a reasonable jury could find that the spill occurred during the "performance" of Delta Oil's work.

### ii.    "Loading or Unloading"

Allied's second argument about the exception relates to the requirement that Delta Oil have been "[l]oading or unloading" when the pollution incident occurred. (Doc. 64 at 31–32). The policy defines "loading and unloading" as the handling of property:

    a.  After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b.  While it is in or on an aircraft, watercraft or "auto"; or

c.  While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

(Doc. 63-6 at 17). By its plain terms, "loading or unloading" includes the time property "is in . . . an . . . auto." (*Id.*) (quotation marks omitted).

The complaint in the *Pro-Built* lawsuit affirmatively alleges that the oil came from Delta Oil's trucks. (Doc. 63-3 ¶¶ 27, 30, 35, 70, 77). The complaint in the *Ferguson* lawsuit alleges that Delta Oil transports "industrial and chemical waste materials" to the Burgess facility, where Delta Oil "dumped, discharged, and leaked" those materials onto the ground. (Doc. 63-2 ¶¶ 12, 14, 20). To the extent there is any ambiguity about whether the discharge was from a truck, the evidence indicates that Delta Oil was parking its trucks there, sometimes with oil in the tank. (Doc. 63-4 at 7, 12). As a result, a reasonable jury could find that the used oil came from "in . . . an . . . auto," satisfying the "loading or unloading" requirement. (Doc. 63-6 at 17) (quotation marks omitted).

### iii.   "Expected or Intended Injury" Exclusion

The transportation endorsement, like the commercial general liability coverage form, contains an exclusion for "'[b]odily injury' or 'property damage'

expected or intended from the standpoint for any insured."[2] (Doc. 63-6 at 27). Allied seeks to apply this exclusion only to the *Ferguson* lawsuit, which alleges that the Delta Oil defendants knew their actions were wrong and would foreseeably cause harm. (Doc. 64 at 33; *see* doc. 63-2 ¶¶ 32–33, 40, 48, 59, 67). But, as discussed above, under Alabama law, foreseeability is insufficient to invoke the "Expected to Intended Injury" exclusion. *Dyer*, 454 So. 2d at 925. As a result, Allied's invocation of this exclusion fails.

### iv.    Summary

A reasonably jury could find that the transportation endorsement's exception "add[s] back" any coverage excluded by the commercial general liability policy's "Pollution" exclusion. *See Town & Country Prop., LLC*, 111 So. 3d at 703 (quotation marks omitted). Accordingly, the court **DENIES** the motion for summary judgment on Allied's claim that it owes no duty to defend under the commercial general liability policy and the transportation endorsement.

In addition to its arguments about the commercial general liability policy and the transportation endorsement, Allied makes arguments about the contractor's endorsement. (Doc. 64 at 22–30). As Allied acknowledges, the contractor's

---

[2] The exclusion contains some additional language. (*See* doc. 63-6 at 27). However, Allied does not make any argument about that additional language, so the court will not address it. (*See* doc. 64 at 33).

endorsement is a "stand-alone coverage form." (*Id.* at 30). It amends the commercial general liability policy only to add another form of coverage. (Doc. 63-6 at 20). All exclusions added by the contractor's endorsement relate only to the "insurance provided under [that] endorsement." (*Id.* at 21). As a result, even a finding that Delta Oil is not covered under the endorsement or that an exclusion eliminates coverage under the endorsement would not change Allied's duty to defend under the commercial general liability policy and the transportation endorsement. The court therefore will not address Allied's arguments about the contractor's endorsement. The court **DENIES** Allied's motion for summary judgment.

    2.  Motion for Reconsideration

Allied moves for reconsideration of the court's dismissal of its request for a declaration that it owes no duty to indemnify, on the ground that, because it owes no duty to defend, it cannot owe a duty to indemnify. (Doc. 64 at 34–37).

As an initial matter, the court remains convinced that Allied's request for a declaratory judgment about its duty to indemnify is unripe. *See Am. Fid. & Cas. Co. v. Pa. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960);[3] *see also id.* at 457–58 ("The damage suits had never been tried. No one had

---

    [3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

yet paid or become legally liable to pay. Whether anything will be paid or be legally payable, no one, on this record, yet knows."); *Allstate Ins. Co. v. Emps. Liab. Assur. Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971) (explaining that *American Fidelity* held "that no action for declaratory relief will lie to establish an insurer's liability in a policy clause contest . . . until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize"). Allied's reliance on an unpublished decision from the Eleventh Circuit does not persuade this court to disregard the Eleventh Circuit's published and binding decisions on this question.

Even absent binding Eleventh Circuit precedent, the court would find the duty to indemnify claim unripe. Allied, again relying on non-precedential decisions, contends that "once it is determined that there is no duty to defend, then as a matter of law there is no duty to indemnify" (doc. 64 at 35) because "the duty to defend is broader than the duty to indemnify" (*id.* at 37). The court has denied Allied's motion for summary judgment, so there is no determination that Allied lacks a duty to defend. But even if the court had granted Allied's motion for summary judgment, Alabama law does not hold that an insurer lacking a duty to defend necessarily also lacks a duty to indemnify.

In Alabama, the duty to defend can arise in two ways: (1) if the plaintiff in the underlying case "alleges a covered accident or occurrence . . . even though the

evidence may eventually prove that the gravamen of the complaint was not a covered accident or occurrence"; or (2) "[i]f the complaint against the insured does not, on its face, allege a covered accident or occurrence, but the evidence proves one." *Tanner*, 874 So. 2d at 1065. The only way an insurer owes no duty to defend is if the complaint does not allege a covered accident or occurrence *and* "the evidence in the litigation between insurer and insured [fails to] prove a covered accident or occurrence." *Id.* By contrast, the insurer's duty to indemnify depends on "the insured's *conduct* rather than the allegedly injured person's allegations." *Id.* at 1066 (emphasis added). This is why the Alabama Supreme Court has warned insurance companies "that where a claim potentially may become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril." *Ladner & Co. v. S. Guar. Ins. Co.*, 347 So. 2d 100, 104 (Ala. 1977) (quotation marks omitted).

An insurer may obtain a declaratory judgment that it owes no duty to defend based on the allegations stated in the underlying complaint, but that declaratory judgment will not protect it from any duty to defend that might arise based on the evidence proved in the underlying case. *See id.* As Judge Hand wrote in an opinion the Alabama Supreme Court quoted with favor: "The injured party might conceivably recover on a claim, which, as he had alleged it, was outside the policy; but which, as it turned out, the insurer was bound to pay." *Id.* at 103 (quoting *Lee v.*

25

*Aetna Cas. & Sur. Co.*, 178 F.2d 750, 752, 753 (2d Cir. 1949)) (alteration accepted); *see also Tapscott v. Allstate Ins. Co.*, 526 So. 2d 570, 574 (Ala. 1988) ("[T]he allegations on the face of the complaint may not be the same issues and causes of action that are ultimately determined. Thus, what may have begun as a claim for an intentional act, which would not be covered by the insurance policy, could end as a claim for negligence, which would be covered by the insurance policy.").

As a result, any request for a declaratory judgment about an insurer's duty to indemnify is doubly unripe: it is unripe because no judgment yet exists—and one might never exist—and it is unripe because the actual facts discovered and proved in the underlying case may be different from the facts alleged in the underlying complaint. *See, e.g.*, *Tapscott*, 526 So. 2d at 574 ("[T]he initial determination of coverage is not absolutely binding. If the complaint initially alleges an intentional tort, but is later amended to include an unintentional tort, the insurer might be required to begin defending and to indemnify for that claim."). In short, a finding that an insurer does not have a duty to defend based on the allegations made in the underlying complaint does not necessarily preclude a finding that the insurer must indemnify the insured from the final judgment in the case. The court therefore **DENIES** the motion for reconsideration.

## III.   CONCLUSION

The court **DENIES** Allied's motion for summary judgment and motion for

reconsideration.

      **DONE** and **ORDERED** this December 22, 2023.

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE